## JONES ET UX. V. LOSEKAMP ET AL.

### (No. 622.)

HOMESTEADS—CONVEYANCE.

1. Since the enactment of Chapter 93, Laws of 1895, to make a valid conveyance of a homestead, or to release the homestead interest in the land, it has been necessary that there be contained in the body of the instrument and in the certificate of acknowledgment a clause expressly releasing or waiving the right of homestead.

2. A lease granting the right to enter upon the lands therein described, except 10 acres around and near the dwelling house and other buildings, and prospect for oil, gas, coal and other minerals, and providing for the payment by the lessee of royalties if either of the minerals should be discovered in paying quantities, was executed by the owner and his wife, but did not contain a clause releasing or waiving the homestead right. *Held,* that the lease was invalid as to the homestead.

3. The statutes restricting the alienation or incumbrance of a homestead refer to premises exempt as such from execution, and, within the operation of such statutes, the homestead cannot consist of more land than will amount in value to $1500.

4. In the case of a farm not exceeding 160 acres but of greater value than $1500, it is held that the homestead consisted of such portion of the premises, including the dwelling house, as amounted in value to $1500 at the time the instrument conveying an interest therein was executed.

5. A lease of a farm, though void as to the homestead, may nevertheless be valid as to the excess after carving out of the premises a homestead of the value of $1500.

6. A farm of 158 acres was worth $4800, the dwelling house being situated upon a legal sub-division which, including

such house, was worth $1556. *Held,* that the homestead consisted of the legal sub-division upon which the dwelling house was situated, and a lease of the entire premises not containing a clause releasing or waiving the homestead was ordered canceled as to the homestead part, and declared to be valid as to the remainder of the premises.

[Decided April 3, 1911.]                    (114 Pac. 673.)

ERROR to the District Court, Big Horn County, HON. CARROLL H. PARMELEE, Judge.

The material facts are stated in the opinion.

*F. Chatterton,* (*E. Nusbaumer, John W. Lacey,* and *Herbert V. Lacey,* of counsel) for plaintiffs in error.

The provisions of the statutes restricting the method of conveying or incumbering a homestead have been held to be mandatory, and that an instrument not executed in the manner required by such statutes is invalid as to the homestead. (Bank v. Bank, 11 Wyo. 56.) Although the instrument in question is called a lease by the parties, it is in effect a grant *in praesenti* of all the oil and other minerals in the lands described, which minerals are an integral part of the realty. Oil, gas, coal and other minerals are as much a part of the homestead estate as the surface or any other portion of the soil, and the title thereto can only be transferred in accordance with the statute. (Sibley v. Lawrence, 46 Ia. 563; Wilson v. Youst, 46 W. Va. 826, 39 L. R. A. 292; Stoughton's App., 88 Pa. 198; Lanyon Zinc Co. v. Freeman (Kan.), 75 Pac. 995; McKenzie v. Shows, 70 Miss. 388, 35 Am. St. 654; Pritchett v. Davis, 101 Ga. 236.) Even an easement constitutes such an interest or incumbrance as to require all the formalities of the statute relative to homesteads to be complied with. (Jones v. Kepford (Wyo.), 100 Pac. 923; Pilcher v. Atchison Ry., 38 Kan. 516; Kloke v. Wolff (Neb.), 111 N. W. 134; McGee v. Wilson, 111 Ala. 615; Evans v. Ry. Co., 68 Mich. 602.) A lease for taking oil, gas and minerals from the land which constitutes the homestead contemplates an occupancy interfering with the use of the premises as a homestead, and

requires the joint consent of husband and wife as by stat-
ute provided, and without it the lease is void.  (Franklin
Co. v. Oil Co., 43 Kan. 518; Oil Co. v. Franklin Co., 38
Pac. 790; Oil Co. v. Parish, 61 Kan. 311, 59 Pac. 640.)
If, as the trial court found, the homestead character had
attached to all of the 158 acres, then it was and is attached
to the oil and other minerals, and a conveyance thereof
to be valid must conform to the requirements of the statute.
The court, however, made a distinction between such con-
veyances as are absolutely void and those which are other-
wise valid, but are not to be construed as releasing the
homestead right.  If such a proposition can be the law, the
remaining portion of the finding is not true, because the
acknowledgment did not comply with the requirements of
the statute.

The instrument in question utterly fails in three important
particulars to conform to the statute in order to render it a
valid conveyance.  (1) The wife's name does not appear
in the body or granting clause of the instrument.  (2)
There is no clause in the body of the instrument expressly
releasing or waiving the homestead right.  (3) The cer-
tificate of acknowledgment does not contain a clause as
required by statute showing the release and waiver of the
homestead right. · It was necessary that the wife's name
appear in the body or granting clause of the instrument.
(Greenough v. Turner, 11 Gray, 332; Pitkin v. Williams,
57 Ark. 242; Alford v. Lehman, 76 Ala. 526; Abel v.
Lothrop, 47 Vt. 375; McGrath v. Berry, 13 Bush. 291;
Withers v. Pugh, 91 Ky. 522; 43 Mich. 502; Gage v.
Wheeler, 129 Ill. 197; Seiffert &c Co. v. Hartwell (Ia.),
63 N. W. 333; Lumber Co. v. Bloom, 64 Ark. 492; Esen-
stadt Co. v. Cramer, 50 Ia. 753; 15 Ency. L., 2nd Ed. 680.)
The omission of the clause releasing the homestead was
fatal to the validity of the instrument.  (Hutchins v. Hug-
gins, 59 Ill. 29; Stodalka v. Novotny, 144 Ill. 125; Board
·v. Beale, 98 Ill. 248; Russell v. Rumsey, 35 Ill. 362; 15
Ency. L. 679; 21 Cyc. 543.)  So as to the omission of a
similar clause in the certificate of acknowledgement.  (1

Ency. L. 538; 15 Id. 681; 1 Cyc. 592, 593; 21 Cyc. 543.) The certificate of acknowledgment fails in several particulars to comply with the statute. (1) It does not show that the wife freely and voluntarily signed the instrument separate and apart from her husband. (2) That she acknowledged it separate and apart from her husband. (3) That she was fully apprised of her right and the effect of signing and acknowledging the instrument. (4) That she waived and released her homestead right. (5) That the husband waived and released his homestead right. All of these facts should have been shown by the certificate. (Tieman v. Cobb, 35 Tex. Civ. App. 289; Laidley v. Land Co., 30 W. Va. 505; Smith v. Ingram, 130 N. C. 100, 61 L. R. A. 878; Gage v. Wheeler, *supra;* Loan Ass'n v. Green, 5 Ida. 660; Danglarde v. Elias, 80 Cal. 65; Lane v. Dolcik, 6 McLean, 200; Russell v. Rumsey, *supra;* France v. Bell, 52 Neb. 57; Betts v. Sims (Neb.), 41 N. W. 117; Conway v. Elgin (Minn.), 38 N. W. 370; Larson v. Butts, 35 N. W. 190; Aultman &c. Co. v. Jenkins, 27 N. W. 117; Bornorden v. Dressen, 12 N. W. 831.) Another objection to the instrument is that it was not signed by the lessee; his signature being required to make it good under the statute of frauds. (Hocking Co. v. Spence, 7 Ohio, 149; Hinsdale v. Humphrey, 15 Conn. 431; Marshall v. Rugg, 6 Wyo. 270.) For these reasons the instrument is absolutely void, and a court of equity cannot give effect to it. (Townsley v. Chapin, 12 Allen, 476; Connor v. McMurray, 2 Allen, 202; Merriam v. Boston, Etc., 117 Mass. 241; Morris v. Ward, 5 Kan. 239; Stodalka v. Novotny, *supra.*) Nor can a void contract be enforced by estoppel. (Whitelock v. Gosson (Neb.), 53 N. W. 980; Weatherinton v. Smith, 109 N. W. 381, 112 N. W. 566; Cryan v. Ridelsperger, 7 Pa. Co. Ct. 473; Glidden v. Strupler, 52 Pa. 400.)

If the doctrine of estoppel *in pais* were applicable to the case it is not properly pleaded. (2 Pomeroy's Eq. Juris., 2nd Ed. 805, 806; 8 Ency. Pl. & Pr. 10-12; 16 Cyc. 810; Taylor v. Dyar, 1 N. W. 728; St. Louis v. Flannagan, 34

Ill. App. 596; Meyerdorf v. Frohmer, 65 N. W. 895; Robbins v. McGee, 76 Ind. 381; Lee v. Anderson, 62 Ind. 537; Unfried v. Heberer, 63 Ind. 67; Wolf v. Towne &c., 32 N. E. 1017; Crary v. Dye, 208 U. S. 515.) A false representation or concealment of material facts is an essential element of estoppel, and where all the parties knew all the facts but were mistaken as to the law, there is no basis for estoppel *in pais.* (Brain v. Bonvillain, 111 La. 441; Buck v. Milford, 90 Ind. 291; Zeigler v. Brenneman, 237 Ill. 215; Lash v. Rendell, 72 Ind. 475; Steel v. R. Co., 106 U. S. 447; Runnels v. Gerner, 80 Mo. 474; Brant v. Virginia &c. Co., 93 U. S. 326; Vasse v. Ball, 2 Dall. 270; Butler v. Court &c., 101 Pac. 481; 16 Cyc. 777; Gray v. Zehner, 72 Pac. 228; R. R. Co. v. Plow Co., 41 N. E. 483; Alt v. Banhalzer, 40 N. W. 830; Goff v. Hankins, 39 N. E. 294.)

A married woman is not estopped by deed not executed in accordance with the statute, nor does estoppel *in pais* apply under such conditions. The principles apply alike to husband and wife and either of them separately. (15 Ency. L. 686; 21 Cyc. 549; Crary v. Dye, *supra.*) The following cases are cited as in point upon many of the foregoing principles discussed in the brief. (Stevens v. Tucker, 126 Pa. 74; Harden v. Darwin, 77 Ala. 472; Hass v. Wells, 17 Tex. Civ. App. 195; Stone v. Sledge, 87 Tex. 49; Cumps v. Kiyo, 104 Wis. 656; Law v. Butler, 44 Minn. 482; Alvis v. Alvis, 99 N. W. 166; Bohler v. Weyburn, 59 Ind. 143; Luman v. Springate, 67 Ind. 115.) The husband is not estopped. (2 Allen, 202; Powell v. Pattison, 100 Cal. 236; Helso v. Seawright, 65 Ala. 431; Abel v. Lothrop, *supra;* Webb v. Davis, 37 Ark. 551; Hall v. Mathews, 68 Ga. 490; Hoge v. Hollister, 2 Tenn. Ch. 606.) The instrument being void neither party is estopped. (Investment Co. v. Burford, 67 Fed. 860; Morris v. Ward, 5 Kan. 239; Gibbons v. Hall, 59 S. W. 814; McGee v. Wilson, 111 Ala. 615; Smith v. Ingram, 61 L. R. A. 878; Morris v. Wilson, 13 Cal. 495.)

The leasing of a homestead by a valid instrument is not an abandonment thereof, nor does the rental of a portion deprive that part of its homestead character. (Pitney v. Eldridge, 58 Kan. 215; *In re* Pope, 98 Fed. 722; Gray v. Scofield, 51 N. E. 684; Hardware Co. v. Connellee, 27 S. W. 448; Woltz v. Woltz, 57 S. W. 905; Dowling v. Horne, 117 Ala. 242; Gates v. Steel, 48 Ark. 539; Dallemand v. Mannon, 4 Colo. App. 262; Sibley v. Lawrence, 46 Ia. 563; Hixon v. George, 18 Kan. 253; Gas Co. v. Parish, 59 Pac. 640; Dulanty v. Pynchon, 88 Mass. (Allen) 510; Earll v. Earll, 60 Mich. 30; Spratt v. Early, 169 Mo. 357; Locke v. Rowell, 47 N. H. 46; Hancock v. Morgan, 17 Tex. 582; Newton v. Calhoun, 68 Tex. 451; Hines v. Nelson, 24 S. W. 541; Herrick v. Graves, 16 Wis. 157; Towne v. Rumsey, 5 Wyo. 11.) It is absurd to contend that there was an abandonment of the homestead under the facts of the case. To constitute an abandonment the intent to do so must be present and evident. (Jones v. Kepford (Wyo.), 100 Pac. 923.) The husband cannot relinquish or abandon a homestead once secured without the wife's consent. An attempt was made to show that the reservation of 10 acres as expressed in the instrument was for the purpose of reserving it as a homestead, and that because such portion was afterwards marked out there had been an abandonment of the homestead in the remainder of the premises, notwithstanding that the plaintiffs had continuously occupied and used the whole of the premises. There is no statutory limitation as to the value of a homestead except for the purpose of exempting it from execution. The statutory limitations upon the method of conveying a homestead has no reference to its value. If the evidence of value had been competent and relevant the witnesses examined upon the question were not shown to be qualified. Because a homestead is worth more than the statutory amount of exemption, it cannot be segregated as to the excess value, even to satisfy a creditor, much less in favor of grantee under an instrument void as not complying with the statute as to alienating a homestead. (Bank

v. Bank, 11 Wyo. 32; Association v. Mensch, 196 Ill. 554; Edwards v. Simms (Ariz.), 71 Pac. 902; Quackenbush v. Reed (Cal.), 37 Pac. 755; Phillips v. Stanch, 21 Mich. 369; Richards v. Chase, 2 Gray, 283.)

*Ridgely & West, W. M. Johnston,* and *Walsh & Nolan,* (*T. J. Walsh* of counsel), for defendants in error.

The instrument in question is a valid conveyance of a leasehold interest in the premises subject to the homestead rights of the plaintiffs. The homestead right which was expressly reserved in the instrument was subsequently asserted by causing the area reserved to be reserved, marked and segregated from the remainder of the tract, thereby relinquishing any occupancy or claim of occupancy to the remainder of the tract as a homestead. The plaintiffs are estopped from disputing the validity of the lease because of any informality in the certificate of acknowledgment. The conveyance is not void under the statute. It seems quite obvious from a plain reading of section 2770, Revised Statutes, that the conveyance or other alienation of a homestead is absolutely void unless the wife of the owner shall, separate and apart from her husband, freely and voluntarily sign and acknowledge the instrument, and the officer shall fully apprise her of her right and the effect of signing and acknowledging the instrument. And that if these requirements are observed the instrument will be a valid one, but the conveyance or incumbrance will be subject to the homestead right. If the intention of the parties is to make the conveyance operative to cut off all right of the owners and occupants, the instrument must contain a clause to the effect that they release their right of homestead, and the certificate of acknowledgment must recite the fact of such release or waiver. It does not seem to have been intended that a failure of the deed to recite a waiver or release of the homestead should make the instrument wholly void. Had it been so intended a proviso to that effect would have been inserted in the statute. It is provided that "no such deed or other instrument" shall

be "construed" as releasing or waiving the right, &c., unless the same shall contain a clause, &c. The court could not construe a void instrument. It is commanded by the statute to give the instrument effect not to hold it void. The word "construe," as here used, means "regarded" or "considered." ' (Churchill v. Imp. Co., 31 Pac. 560.) Laws in restraint of the alienation of property are to be strictly construed and never extended beyond the express will of the law maker. (Richardson v. Answeyeler, 14 La. Ann. 637; 26 Ency. L. 662.). The primary and usual office of a proviso is to exclude something out of the statute which would otherwise be within it. (Deitz v. Staub, 115 Fed. 39; State v. Belew, 56 N. W. 782.)

The statute makes a distinction between a "homestead" and a "right of homestead." The first part of section 2770, including the first proviso, deals with a homestead—a certain specific tract occupied by a family. (21 Cyc. 458.) The second part treats of the right of homestead. What that right is can be ascertained by consulting other provisions of the statute. (Secs. 3901-3904.) Section 3904, which limits the homestead to the valuation of $1,500, does not mean that the owner and occupant has no homestead right if the value exceeds $1,500. The succeeding section (3905) shows that in such case he has a homestead right— namely a right in himself and his family to occupy the premises regardless of any sale that may be made under execution so long as the property has a value not more than $1,500. If it sells for more than that he is entitled to $1,500. The creditor may find his judgment useless to him when it is entered, but acquiring value by the lapse of time and the increase in the value of the property. It is the homestead right as so defined, that is doubtless referred to in the second proviso of section 2770 that the right can be asserted against one having a conveyance of the homestead as specified in the first proviso of the section, but containing no such recitals as are contemplated in the second proviso. The section must be read in connection with the other provisions of the statute, because otherwise there is

nothing by which its extent can be defined, either as to area or value. (Joyner v. Sugg, 42 S. E. 828; Wallace v. Harris, 32 Mich. 380; Cooper v. Cooper, 127 N. W. 266.) Under similar statutes in Illinois a conveyance executed with the formalities required by law, but without a release of homestead, is valid as to the excess over the statutory limit in value. (Gillespie v. Fulton &c. Co., 86 N. E. 209; White v. Bates, 84 N. E. 907; Watson v. Doyle, 22 N. E. 613.) These cases are especially pertinent since this court referred to several Illinois decisions approvingly in Bank v. Bank, 11 Wyo. 32. The general rule is that a conveyance in which the wife does not join is valid as to the excess above the homestead exemption. (15 Am. & Eng. Ency. 648; Wilson v. Wilson, 120 N. W. 147 (Neb.).) There is, apparently, no objection to a conveyance of land subject to the homestead right unless forbidden by statute. (21 Cyc. 528.) The conclusion that the lease was not void but that it simply reserved—that it did not pass—the homestead right, is deducible from another section of the statute, namely section 2752, prescribing a sufficient form for certificate of acknowledgment. If a conveyance of a homestead, no matter how great its territorial extent or its value, is utterly void, as claimed by the plaintiffs in error, instead of the direction clause "with the following addition where the right of homestead is released," the section would have read "with the following addition where the homestead is alienated or incumbered." Equally persuasive is section 2768, prescribing a short form of quit claim deed, and section 2776, which indicates the method of releasing homestead. These sections are inexplicable upon any theory of the utter invalidity of a conveyance of a tract embracing a homestead except it contain a clause or waiver of release. (Bank v. Bank, 11 Wyo. 32; Waples on Hom'ds & Exemp. 405.) We reach the conclusion, accordingly, that the lease in question was not void when it was executed, but that it was subject to the homestead right of the lessors in the premises which they were entitled to assert at any time. That homestead right they did thereafter assert, by having

the 10 acres around the dwelling house set off. By their acts they did what the court would have done if appealed to. (Wooten v. Pennock, 114 S. W. 465.)

The parties are estopped from asserting any informality in the execution of the lease affecting its validity. (Engholm v. Ekrem, 119 N. W. 35; Grice v. Woodworth, 80 Pac. 912; Shay v. Vevis R. S. Co., 83 Pac. 202; Brown v. Coon, 85 Am. Dec. 404; Spafford v. Warren, 47 Ia. 47; Drake v. Painter, 77 Ia. 731; Winkleman v. Winkleman, 79 Ia. 319; Walker v. Kelly, 51 N. W. 934; Ford v. Ford, 124 N. W. 1108; Bovine v. Sheldon, 119 N. W. 1090; Bruner v. Hicks, 230 Ill. 566.) The contention that an equitable estoppel can not be asserted against a married woman has no merit in any jurisdiction where her emancipation is complete as it is in Wyoming. (Secs. 2972, 2973, 2974, 2975, 2976; 15 Am. & Eng. Ency. 800; 2 Pomeroy's Eq. Jur. 814; McDowell v. McDowell, 119 N. W. 702.) It is argued by counsel for plaintiffs in error that deception and fraud is an essential element of estoppel and that the lessees are supposed to know the law and cannot be heard to assert that they were misled. As above suggested, the case scarcely calls for a careful analysis of the fundamental basis of the doctrine of estoppel. But it may be answered that the doctrine asserted is not accepted without vigorous protest. (Galbraith v. Lunsford, 1 L. R. A. 522, and note.) And it is not regarded as having any application to a case of the character of that at bar. The man who makes a parol contract to purchase a piece of real estate and spends his money in improving it is equally aware, as the law presumes, that his contract is void; he knows all the facts; he is not misled about anything; no misrepresentations of any kind are made to him; yet the doctrine of estoppel can be appealed to by him against his vendor should the latter endeavor to dispossess him. (2 Herman on Est. 930-987; Lydick v. Gill, 94 N. W. 109.) The estoppel is operative though both know all the facts, but both labor under the same error as to the validity of the title under which the party making the improvements

claims.  (Williamson v. Jones, 25 L. R. A. 222-236; Burgess v. Hixon, 88 Pac. 1076.)

Neither the constitution nor the statute requires any joint instrument to convey the homestead.  The constitution requires the "joint consent" of husband and wife, but does not even require that such joint consent be expressed in writing.  (Sullivan v. Wichita, 68 Pac. 55; Johnson v. Samuelson, 76 Pac. 867.)  The statute simply requires that the wife "sign" the instrument.  The wife has certainly signed here.  The criticism made of the certificate on account of alleged defects other than the one heretofore canvassed is fully disposed of by the decision of this court in Adams v. Smith, 11 Wyo. 200.  The almost universal holding is against the contention that the lessee is required to sign the lease to satisfy the statute of frauds.  When he accepts the lease and goes into possession he becomes bound by all its covenants.  (Thornton on Oil & Gas, 102; 2 Devlin on Deeds, 940a.)

The findings of the court are amply justified by the evidence, but so far as the decree rests upon them it could not be disturbed in any event, since there is no recital in the certificate authenticating the bill, nor in the body of it that it contains all the evidence.  (Callahan v. Houck, 14 Wyo. 201.)

Above named counsel for plaintiffs in error, in reply.

We have inserted as an appendix the full statutes involved and discussed in this reply brief exactly in the language in which those statutes were passed by the legislature.  We have also inserted the statutes providing for the revision of 1899 and of 1910 for the purpose of showing that the legislature did not intend to authorize the revisers of the statutes to change in any degree whatever the statutes as enacted.  Indeed, the legislature could not have delegated to the revisers any such power even had it been so disposed.  (Cooley on Const. Lim., 6th Ed., p. 137.) Counsel have been singularly unfortunate in that their argument as to the construction of the statutes is based upon

certain words in the revised statutes and certain methods of joining the different portions of the revised statutes which were entirely the work of the revisers and not of the legislature. For example, in the Revised Statutes of 1899 the revisers put together the last paragraph of Section 5, Chapter 93, of the laws of 1895, and Section 5 of Chapter 21 (page 306) of the Laws of 1869, as amended by Chapter 93 (page 337) Laws of 1886, and called this section so made up Section 2770 of the Revised Statutes of 1899.

In constructing section 2770 the revisers inserted as a connecting word between the quoted portion of the laws of 1869 and the quoted portion of the laws of 1895 the word "provided," and upon this word "provided" counsel for the appellees have built quite an argument on the theory that the legislature by including the last portion of section 2770 as a proviso must be held to have intended only the modification of the words last preceding, such as legislatures usually intend by provisos properly so-called. This argument disappears entirely when we remember that the legislature never used this word "provided" in that connection. Of course, the revisers did not have any power to affect in any way whatever the meaning of either of the two separate statutes, either by bringing the statutes together into the same section or by the use of any particular connecting word. Next after the word "provided" so inserted by the revisers, the statute as contained in section 2770 is made to read "that no *such* deed or other instrument shall be construed as releasing," etc. And from the use of this word "such" counsel draw the conclusion that this latter portion of section 2770 as so made up relates exclusively to a deed or other instrument to effect a sale, mortgage, disposal or incumbrance of a homestead, and out of this word "such" the argument is made quite forceful. But here again the argument must fall because the word "such" is an interpolation pure and simple by the revisers, and was never put in the statute by the legislature, as will be seen by looking at the statute itself quoted in the appendix. The statute as actually enacted is "no deed or other instrument

shall be construed," etc.   Moreover, this matter, included
in what is written as the last proviso in section 2770 as it
was passed by the legislature, had no grammatical connec-
tion whatever with anything else that is now in section
2770; nor with any other statute relating to homesteads
or their disposition.   It was a broad statute providing that
no deed or instrument should be construed as releasing
homestead rights unless it had particular provisions therein
prescribed.

Counsel also find reasons for their contention in the
closing portion of the form for certificate of acknowledg-
ment as contained in the Revised Statutes, 1899, section
2752.   That closing portion is as follows   "(with the fol-
lowing addition where the right of homestead is released,)
including the release and waiver of the right of homestead."
Here again, the very words used and every one of them
from which counsel make their argument were placed there
by the revisers and not one of them by the legislature.   All
of this is apparent from the original statutes.   What aid
can be afforded by words so supplied?   What difference
can it make in construing the statutes whether the revisers
in their direction as to the proper form used apt or inapt
terms?   Again, counsel find great comfort in the closing
words of section 2768 of the Revised Statutes of 1899,
being the form for a quit-claim deed.   Those closing words
are,  "(and where the right of homestead is released add
the following,) hereby relinquishing and waiving all rights
under and by virtue of the homestead exemption laws of
said state."   Here again it cannot matter that the language
used is more or less apt than that which counsel has sug-
gested.   Every word was written there by the revisers; not
one word by the legislature.

Counsel find certain words in section 2776 which they
deem inexplicable on any theory of the utter invalidity
of a homestead conveyance except it contain the clause
of waiver or release of the homestead.   And it must be
confessed that the words as they stand in section 2776 seem
to say that there may be a deed for a homestead which does

not require a release of the homestead rights though a statute so providing would seem a very strange one. The argument is drawn from the fact that the statute as it stands seems to recognize deeds of homestead other than those provided by section 2776 because it concludes with the manner of acknowledgment, and says that the acknowledgment shall be "in the manner provided by law for the acknowledgments to deeds of homesteads." And from this there is some force in the argument of counsel that there is here recognized a deed for a homestead and an acknowledgment of it and a form for an acknowledgment of it. which does not release homestead rights. But this language as contained in section 2776 was never put there by the legislature. The provision as to the acknowledgments in case of release or waiver of homestead rights is that they shall be acknowledged "in the manner provided by section 2784 of the Revised Statutes of Wyoming." This means, of course, section 2784 of the Revised Statutes of 1887. Now, when we remember that section 2784, being the portion down to what is placed as the second proviso in section 2770 of the Revised Statutes of 1899, was enacted in 1869 in practically its present form, and amended to its exact present form in 1886, and that section 2776 was enacted in 1895, the whole situation becomes easy and the argument of counsel loses all support.

From our standpoint the situation is plain. In 1869 the legislature passed a statute very largely like section 2770 of the Revised Statutes of 1899 down to the second "provided." In 1886 the statute was amended so as to read exactly as the statute of 2770 down to the second "provided." By this statute the legislature made it very clear that no homestead could be sold unless the wife of the owner joined in the deed. At that time the provisions relating to the selection of a homestead from the property of the wife were not on the statute books. Those were added in 1890-91, when the probate code of California was adopted. The conception of the legislature as to the homestead was therefore a piece of real estate owned by the husband and

occupied by him jointly with his wife.  So, in '69, and like-
wise in '86, the provisions of the law were in the light of
that conception, but it safeguarded the wife with the very
greatest care and provided for the form of acknowledgment,
and especially the manner in which the acknowledgment of
the wife should be taken and the information that should
be given to her while taking the acknowledgment.  In the
constitution the thought was introduced that a homestead
might be taken from the property of the wife, and that
same thought was added to the statutes in the laws of
1890-91.  The constitution provided that when the relation
of husband and wife exists the joint consent of both should
be obtained to authorize the alienation of the homestead.
In 1895, in harmony with the idea of the constitution that
there should be a joint consent of both husband and wife
to the release or conveyance of a homestead, whether owned
by the husband or the wife, and in harmony with the thought
that had been likewise introduced into the statutes that the
homestead might be the property of the wife as well as of
the husband, but still that joint consent to the conveyance
and alienation must be given, made the provisions that are
contained in chapter 93 of the laws of 1895.  These pro-
visions are the only portions of that chapter that in any
way refer to homesteads.  The rest of the chapter deals
with alienations and conveyances generally, and it is after
such general provisions for conveyances of land not home-
stead in character that the legislature introduces the pro-
vision as to inserting a clause in an instrument releasing
the homestead when it is desired to release it.  And it is
likewise in connection with provisions for alienations and
conveyances generally and not of lands homestead in char-
acter that the legislature also introduced the following:
"No deed or other instrument shall be construed as releas-
ing the right of homestead, unless the same shall contain
a clause expressly releasing or waiving such right.  And
in such case the certificate of acknowledgment shall contain
a clause substantially as follows, 'including the release and
waiver of the right of homestead,' or other words which

will expressly show that the parties executing the deed or other instrument intended to release such right. And no release or waiver of the right of homestead by the husband shall bind the wife unless she join in such release or waiver." There was no repeal of the statute enacted in 1869 and amended in 1886 constituting the portion of section 2770 down to the second word "provided." Nor is there anything in the act of 1895 which in any way conflicts with the statute of 1869 as amended in 1886. We do not deem it necessary to cite any authorities on the proposition that these statutes are all therefore in full force. Neither one in the slightest degree conflicts with the other. Each adds its own terms. To convey a homestead, therefore, the requirements of the acts of 1869 and 1886 must be complied with, as also the requirements of the act of 1895. To convey a homestead, therefore, (using the word "convey" in the sense of our statute, meaning any instrument affecting real estate, including even leases for three years or more,) the wife must be examined separate from her husband, informed of her rights and of the effect of the instrument to be executed, and must then acknowledge the free and voluntary character of her act. In addition to that, the statute provides the manner of giving such consent. It must be given by writing into the instrument itself words showing that the instrument is intended to release and waive homestead rights. In addition to that, the acknowledgment must call particular attention to these same homestead rights, and must show in the acknowledgment itself, as well as in the instrument, the release and waiver. Such we believe to be the clear and manifest purpose of the legislature as revealed by the general tenor of the acts passed and by the words used in the enactments.

In this state there is no ground for any distinction between a homestead and a homestead right, nor for saying that a homestead is a mere estate in land. It is land itself which constitutes the homestead, and there are no homestead rights conferred except by the statutes which give homestead. Therefore one who conveys away his home-

stead, conveys away, releases and waives his homestead right, and one who conveys, releases, and waives his homestead right conveys his homestead. The protection of the homestead is not merely from execution creditors. Its sale is guarded and restricted not only as to the persons who must be joined in the sale, but as to the manner in which it shall be made. And such statutes so far enacted are mandatory in character. Under these statutes there is no room for the thought of reversion, remainder, or anything else carving out of the land occupied as a homestead something over and beyond the homestead right. (R. S. 1899, Secs. 4741-4744; Fath's Est. (Cal.), 64 Pac. 995; Fisher v. Bartholomew (Cal.), 88 Pac. 608.) The Illinois decisions are not in point here, for the reason that by the statute of that state the homestead is only an estate of $1,000 in the land; but in this state the hometsead takes the entire fee, so that it cannot be held that the excess above the fifteen hundred dollar limit is validly conveyed though not in accordance with the statutory requirements. (Quackenbush v. Reed (Cal.), 37 Pac. 755; Edwards v. Simms (Ariz.), 71 Pac. 902.) The case of Bank v. Bank, 11 Wyo. 32, does not decide nor attempt to decide the question here involved.

Counsel for defendants in error submitted an additional brief after the argument, answering some of the suggestions contained in the reply brief of plaintiffs in error, substantially as follows:

It makes no difference whether section 2770 is a union of two acts or parts of acts passed at different times or whether all its provisions were originally enacted as part of the same section. Of what consequence is it that the revisers put in the word "provided" where it occurs the second time in the section? Did they not justly assemble the acts in reference to the various subjects? In what respect has the meaning been changed by the language they supplied with a purpose (within or without their power) to associate related sections of different acts? There is

no possible shade of difference in meaning between the statute as the sections were originally enacted and as it appears in section 2770. Learned counsel who called attention to the want of power of the revisers to change the statute is unable to point out any difference in meaning that such change may have caused. Considering the statute as counsel has assembled it in the reply brief, the conclusion is obvious that the only kind of a deed as to which the provision of section 5 of the act of 1895 can have any application, is a deed executed pursuant to the provisions of section 5 of the act of 1869, as amended by section 2 of the act of 1886. Since every deed or other instrument by which the owner undertakes to "sell, mortgage, or otherwise dispose of or incumber," the homestead is absolutely void, the paragraph taken from the act of 1895 cannot operate except in the case of a deed executed with the formalities prescribed in the other act. The court could by no possibility ever be called upon "to construe" any other. As remarked in the original brief, the court does not construe a void instrument. It simply declares that it is void. Accordingly, the revisers did no violence to any significance of the statute by making the paragraph of the act aforesaid of 1895 read "no *such* deed." Any instrument affecting the title to the homestead, made at any time between the act of 1886 and that of 1895, executed as provided in the first part of section 2770, would, confessedly, be a valid conveyance. In 1895 the legislature, in effect, said that any instrument intended to alienate the homestead not executed as required by the act of 1886 should continue to be "absolutely void;" but that any instrument which should observe those requirements (that is, any *such* instrument) thereafter executed, should not be construed as releasing the right of homestead unless containing a clause expressly releasing or waiving such right and a similar recital in the certificate of acknowledgment.

That there is a difference between a "homestead" and a "right of homestead," in the parlance of the law, is scarcely to be disputed. That there is a distinction recognized by

the law of this state cannot reasonably be denied. Though a homestead be a body of land including the residence of the family, the right of homestead, as between the owner and the creditor, is a right to hold that land free from levy if it is not more than a lot in a city, or, if a farm not more than 160 acres, and in either case of a value not to exceed $1500. If the premises are worth more than $1500 the "homestead right" is merely a right to have $1500 net out of any forced sale. One may release or waive a right or claim. It is a misuse to speak of him as "releasing" land, or as "waiving" land. The statute refers to releasing a right of homestead, not to alienating or incumbering a homestead. Where the deed is executed as provided by the Act of 1886, but without a clause of waiver or release, it cannot be held to be void, but the statute permits the grantor to assert his "right of homestead" notwithstanding. The grantee in such a case is in the same situation as a creditor with a judgment. Each has a right to go into equity to have defined the tract he may claim in the one case and subject in the other. (Wallace v. Harris, 32 Mich. 380; Cooper v. Cooper, 127 N. W. 266.) These were clearly the views entertained by this court in Bank v. Bank, 11 Wyo. 32.

BEARD, CHIEF JUSTICE.

The plaintiffs in error, Edward E. Jones and Lettisha Jones, brought this action against the defendants in error, John D. Losekamp and the Montana and Wyoming Oil Company, to cancel a certain lease executed by plaintiffs to defendant Losekamp and to enjoin defendants from occupying the leased premises, or interfering with defendants' rights therein. Upon the trial of the cause the court dismissed the petition on the merits and rendered judgment against plaintiffs for the costs of the action. From that judgment plaintiffs bring error.

On April 14, 1906, and prior thereto, plaintiff Edward E. Jones was the owner of the E ½ of the SW ¼ and the SW ¼ of the SW ¼ of Sec. 34, Tp. 56 N., and lot 3 of Sec. 3, Tp. 55 N., all in Range 97 W. in Big Horn county. The

plaintiffs are husband and wife, and on said date were, with their children, residing on said premises, the dwelling house and other buildings being situated upon said lot 3. On said date the plaintiffs signed and acknowledged an instrument in writing or lease by the terms of which they granted to defendant Losekamp the right to enter upon and prospect said premises for oil, gas, coal and other minerals, and should either be found in paying quantities, to extract the same upon certain stipulated royalties. There was reserved "ten acres from this lease and from the above described land that portion that is and being around and near the house and other buildings which this lease shall have no effect on." Edward E. Jones alone is named in the lease as lessor, but it is signed and acknowledged by both himself and his wife. There is no release or waiver of the right of homestead in the premises, contained in the body of the lease, nor does the certificate of acknowledgment contain a clause substantially as follows, "including the release and waiver of the right of homestead." The lease was assigned by Losekamp to his co-defendant, The Montana and Wyoming Oil Company, and soon after the execution of the same said company entered upon a part of said leased premises and commenced boring for oil and gas, and has continued such operations with reasonable diligence, with the result that about November, 1906, a well producing oil was discovered, and subsequently and before the commencement of this action other wells were drilled by said company on the premises, two of which proved to be productive, each having a producing capacity of about one hundred and fifty barrels of oil per day. Said company expended in said operations and in prospecting and development work on the premises under the terms of the lease, and relying in good faith thereon, not less than $25,000; all of which was done with the knowledge of plaintiffs, and without objection or protest on their part until the commencement of this action, which was nearly three years after the execution of the lease. In April, 1908, the ten acres reserved from the lease were surveyed and the boun-

daries thereof established as desired by Edward E. Jones, and satisfactory to defendants, and which was then and ever since has been retained by plaintiffs as their place of residence and has been so occupied by them. The purpose of Jones in marking the boundaries of the ten acres was to segregate the ten acres reserved from the leased land. The value of the land owned by Jones at the time of the execution of the lease was $4800, and of the ten acres reserved and marked off therefrom $800, including the improvements thereon. No selection could have been made of ten acres about the buildings on said land, in accordance with the terms of the lease, which would at that time have exceeded in value the sum of $800. On July 14, 1908, Edward E. Jones received and receipted for $50, as the proceeds from oil produced from said land in lieu of the royalties reserved in the lease, and on May 10, 1909, he received and accepted $43 in lieu of royalties to that date. No part of said lot 3, upon which plaintiff's dwelling house and other buildings are situated, has been occupied, prospected or explored by the defendants.

The foregoing condensed statement of the facts found by the district court, material to a determination of the questions here involved, we think sufficient for that purpose.

The questions involved are: (1) Is the lease, as executed, valid as to the homestead? (2) What constituted plaintiff's homestead at the time the lease was executed? (3) Is the lease valid as to the excess after carving out of the premises a homestead of the value of $1500? (4) Are plaintiffs estopped from claiming more than the ten acres as their homestead?

The Constitution of this state (Constitution, Article XIX, Sec. 1, Homesteads), is as follows: "A homestead as provided by law shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists." Long prior to the adoption of the Constitution the

laws of the Territory provided for homesteads, declared who should be entitled thereto, and defined the same. (Ch. 21, Laws 1869.) Section 5 of that act as amended and re-enacted by Ch. 83, S. L. 1886, reads: "Every owner or occupant of a homestead as established by this act, may voluntarily sell, mortgage or otherwise dispose of, or en-cumber the same; Provided, That every such sale, mort-gage, disposal or encumbrance shall be absolutely void, un-less the wife of the owner or occupant of such homestead, if he have any, shall, separate and apart from her said husband, freely and voluntarily sign and acknowledge the instrument of writing, conveying, mortgaging, disposing of, or encumbering such homestead, and the officer taking her acknowledgment shall fully apprise her of her right and the effect of signing and acknowledging such instrument." This provision appears as Sec. 2784, R. S. 1887. The legis-lature of 1895 passed an act, entitled, "An act concerning conveyances and providing for the cancellation and dis-charge of mortgages and deeds of trust." The first section of that act provides a short form for a warranty deed and declares its effect. Section 2 likewise provides for a quit claim deed, and section 3 for a mortgage. In a separate paragraph at the end of Sec. 3, is the following, "When the grantor or grantors in any such deed or mortgage for the conveyance of any real estate desires to release or waive his, her or their homestead right therein, they or either of them may release or waive the same by inserting in the form of the deed or mortgage (as the case may be), provided in sections one (1), two (2), and three (3), after the words 'State of Wyoming' in substance the following words, 'hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this state,' and in such case such instrument shall be acknowledged in the manner provided by section 2784 of the Revised Stat-utes of Wyoming." Sec. 4 of the act provides how mort-gages and deeds of trust may be discharged. Sec. 5 of the act provides a general form of certificate of acknowledg-

ment, followed in a separate paragraph with, "No deed or other instrument shall be construed as releasing the right of homestead, unless the same shall contain a clause expressly releasing or waiving such right. And in such case the certificate of acknowledgment shall contain a clause substantially as follows, 'including the release and waiver of the right of homestead,' or other words which will expressly show that the parties executing the deed or other instrument intended to release such right. And no release or waiver of the right of homestead by the husband shall bind the wife unless she join in such release or waiver." This provision and Sec. 2784, R. S. 1887, above quoted, were made one section by the revisers (R. S. 1899, Sec. 2770), with some changes in the wording, but we have quoted the several acts as passed by the legislatures. It may be that prior to the act of 1895 it was not necessary for the instrument to contain a clause releasing or waiving the right of homestead or to refer to that fact in the certificate of acknowledgment in order to release or waive that right; but, considering all of these acts together, we think it was clearly the intention of the legislature to require since that time, such statement to be contained in the body of the instrument and in the certificate of acknowledgment, to make a valid conveyance of the homestead, or to release the homestead interest in the land conveyed. The lease in question in this case being defective in both these respects must be held to be invalid as to the homestead.

2.   What, then, is the homestead the alienation or encumbrance of which is thus restricted? The homestead mentioned in the Constitution is "a homestead as provided by law." The first Territorial legislative assembly of Wyoming Territory passed an act, entitled, "An act to provide for homesteads in the Territory of Wyoming." (Ch. 21, Laws 1869.) Section 1 of that act is as follows, "Every householder in the Territory of Wyoming, being the head of a family, shall be entitled to a homestead, not exceeding in value the sum of fifteen hundred dollars, exempt from execution and attachment arising from any debt, contract or

civil obligation entered into or incurred after the first day of January, A. D. one thousand eight hundred and seventy." Section 4 of that act is as follows, "The homestead mentioned in this act may consist of a house and lot or lots, in any town or city, or if a farm consisting of any number of acres not exceeding one hundred and sixty acres, so that the value does not exceed fifteen hundred dollars." The homestead so provided for, defined and limited still continues to be, so far as we are advised, the only homestead provided for by law. If it is within a town or city it may consist of an unlimited number of lots without regard to the number of acres they may contain; but if a farm it cannot consist of more than one hundred and sixty acres, although the value of the full one hundred and sixty acres may be much less than fifteen hundred dollars; but in neither case can it consist of more land than will amount in value to that sum. The language of the statute above quoted, that every owner or occuupant of a homestead *as established by this act* may voluntarily sell, etc.; provided, that every *such sale,* etc., places the restriction as to disposition, only upon the homestead as limited in quantity by the act establishing it. We do not overlook another provision of the statute to the effect that when any creditor shall be of the opinion that any homestead provided for in this act is of greater value than $1500, such creditor may proceed against said homestead as in ordinary cases, and if said homestead shall sell for more than $1500 and costs, the excess shall be applied to the payment of the demand of such creditor, the sum of $1500 being paid to the owner of the homestead; nor the further provision of our probate law, that if the homestead is returned in the inventory appraised at more than $1500, the appraisers must determine whether the *premises,* (not the homestead), can be divided without material injury, and if they find they can be thus divided, they must admeasure and set apart to the parties entitled thereto such portion of the premises, including the dwelling house, as will amount in value to $1500,

giving the metes, bounds and full description of the portion set apart as a homestead. In the case of a sale by a creditor it is clear that the homestead exemption is only $1500, and under the probate law the homestead of the deceased which is to be set apart to those entitled to it, is such portion of the premises as will amount in value to $1500. It is apparent, therefore, that where these statutes speak of the homestead as being of greater value than $1500, they mean the premises occupied or claimed as such, and not the homestead exempt from forced sale, or to which the restriction upon disposition applies. And, again, our probate law was taken from the California statutes, in which state there is provision made for those entitled to a homestead to select, plat and record a declaration of homestead, while we have no such provision in our statutes, or any statute declaratory of the effect of such selection if made. In the case at bar, the premises being of greater value than $1500, the plaintiffs' homestead consisted of such portion of the premises, including the dwelling house, as amounted in value to the sum of $1500 at the time the lease was executed.

3.  Is the lease valid as to the excess after carving out of the premises a homestead of the value of $1500? Our view of the law on that question is well expressed in the opinion of the Supreme Court of Minnesota in the case of Weitzner v. Thingstad, 55 Minn. 244, where that court said: "It does not follow, however, where such a contract includes lands other than the homestead, that it is also void as to such other lands. A contract to convey a homestead by the husband alone, is not illegal in the sense of being prohibited as an offense. The illegality is not that which exists where the contract is in violation of public policy or sound morals, or founded on an illegal consideration, which vitiate the whole instrument. The sole object of the statute was to prevent the alienation of the homestead without the wife's joining in the conveyance or contract. The policy of the law extends no further than merely to defeat what it does not permit. It merely withholds from the hus-

band the power to alienate the homestead in that way,—in other words, provides that the homestead is not grantable in that way; and it was never held that the whole grant would be void, merely because a part of the land was not grantable." (See also, Wallace v. Harris, 32 Mich. 380; Engle v. White, 104 Mich. 15; Cooper v. Cooper, 127 N. W. (Mich.) 266; McGuire v. Van Pelt, 55 Ala. 344; Weston v. Dolye, 130 Ill. 415; Gillespie v. Fulton Oil & Gas Co., 236 Ill. 188; Wilson v. Wilson, 120 N. W. (Neb.) 147; Atkinson v. Atkinson, 37 N. H. 434; Bank of Louisiana v. Lyons, 52 Miss. 181.

This construction of the statute is just and equitable. It secures to the parties entitled thereto the homestead provided by law and permits the owner of the property to dispose of the excess. It follows, therefore, that the lease in question in this case is valid as to that portion of the premises not included in the homestead.

4. The defendants contend that the plaintiffs are estopped from claiming the lease to be invalid, or to claim more than the ten acres as their homestead, by permitting defendants to expend a large sum of money in prospecting and developing the lands, and thereby greatly increasing its value, without objection or protest. On the other hand the plaintiffs contend that the doctrine of estoppel *in pais* does not apply to a married woman. While we are inclined to the opinion that, in this state where the disability of a married woman, as it existed under the common law, to contract and deal with her property has been almost entirely removed, she may be estopped in the same manner and to the same extent as a *feme sole,* we do not think that question arises in this case. The defendants had not entered upon or conducted any of their operations upon that part of the premises which could be properly regarded as the homestead, and until they did so there was no call for objection or protest on the part of the plaintiffs. The dwelling house and appurtenances were all situated on lot 3, which, according to the findings as to value, was sufficient to constitute

plaintiffs' homestead, and no part of which had been occupied by defendants.   The court found the value of the entire tract consisting of 158 acres to be $4800 at the date of the lease, the witnesses testifying to the value per acre.   The value of the ten acres at that time, as found by the court, was $800, leaving the value of the 148 acres covered by the lease $4000, or about $27 per acre.   According to these findings, which are sufficiently supported by the evidence, fractional lot 3, containing 38 acres, including the ten acres, was worth $1556, substantially the quantity of land to which plaintiffs were entitled as a homestead.   The facts being before the court, we think the matter should be settled in this proceeding.   The judgment of the district court should be modified as above indicated; and the cause will be remanded to the district court with direction to enter a decree canceling the lease as to said lot 3, and declaring it valid as to the remainder of the premises; and as so modified the judgment of the district court will be affirmed.

*Modified and Affirmed.*

SCOTT and POTTER, JJ., concur.