## DELFELDER V. TETON LAND & INVESTMENT CO.

(No. 1792; August 29, 1933; 24 Pac. (2d) 702.)

For the plaintiff in error, there was a brief by *E. E. Enterline, E. Paul Bacheller and Madge Enterline,* all of Casper, and *F. A. Michels* of Lander, Wyoming, and oral arguments by Messrs. Enterline and Bacheller.

146

For the defendant in error there was a brief by *W. E. Hardin* of Lander, *W. E. Mullen* of Cheyenne, *Corthell, McCollough & Corthell* of Laramie, Wyoming, and oral arguments by *Messrs. Mullen* and *Corthell.*

148

150

*E. E. Enterline, Madge Enterline,* and *E. Paul Bacheller of Casper,* and *F. A. Michels* of Lander, Wyoming, in reply.

BLUME, Justice.

On January 28, 1921, J. A. Delfelder and Evelyn M. Delfelder, his wife, executed to John Hay a mortgage covering apparently all of the real property owned by the mortgagors in Fremont County, Wyoming, including the home of the mortgagors, to secure the sum of $225,000, which both mortgagors agreed to pay. Other security on live stock was given in addition. The mortgage above mentioned contained the clause that the mortgagors expressly waived and released any and all rights, benefits, privileges, advantages and exemptions under and by virtue of any and all statutes of the state of Wyoming providing for the exemptions of homesteads from sale on execution or otherwise, and the mortgage was further duly acknowledged in accordance with the requirements of the statute relating to the waiver of a homestead right, separate examination being made of the wife. It also contained the usual clause giving power of sale to the mortgagee. J. A. Delfelder died soon after the execution of the mortgage, and on May 20, 1921, Evelyn M. Delfelder, his widow, was duly appointed execu-

trix of his estate. We shall assume, for the purpose of this case, that it was shown herein that notice to creditors was duly given, the first publication thereof being on May 27, 1921 The indebtedness under the foregoing mortgage was, soon after it was given, reduced to the principal sum of $70,000, apparently by the sale of the livestock. Several renewal notes were given by the executrix for the debt, for the purpose of extending the payment thereof, the first renewal being made in October, 1921, the last on April 21, 1923, each for the sum of $70,000. No formal claim, however, was filed with the executrix. On March 24, 1924, the mortgage above mentioned and the notes secured thereby were duly assigned to the American National Bank. That Bank on April 18, 1924, commenced foreclosure of the mortgage under the power of sale contained therein. At that time there was due $79,269, exclusive of attorney's fees. Costs and expenses of the sale were $177. The sale under the mortgage was made on June 2nd, 1924, pursuant to the notice, and the property covered by the mortgage was sold to the assignee of the mortgage for the sum of $72,000. One Sam Jensen, who describes himself as under-sheriff of Fremont County, acted "as auctioneer" in making the sale of the premises, and on December 19, 1924, as such under-sheriff, delivered a deed of the premises to the purchaser at such sale, the deed reciting the usual facts. On March 19, 1926, the American National Bank conveyed the premises so sold to the Teton Land and Investment Company, plaintiff in this action. That company, on March 27, 1931, brought an action against Evelyn M. Delfelder to recover the premises in controversy in this case, the petition alleging the usual facts contained in a petition for the recovery of real property, usually called ejectment. The defendant answered on October 16, 1931. In addition to a general denial, she

pleaded the death of J. A. Delfelder, her appointment as executrix, the making and return of an inventory and appraisement on the 15th of June, 1921, wherein the property in controversy in this case, namely, Lots 17 and 18 of Block 24 of the Town of Riverton, were stated to be a homestead and were appraised at the sum of $5000.00; that a subsequent appraisement of that property was made on October 14, 1931, at the sum of $2500, and that the appraisers found that the property could not be divided without material injury; that lots 17 and 18 above mentioned were occupied as a home by the defendant and her husband during his life time, and is now being occupied by her as such; that a sale of the mortgaged premises was made as above mentioned; that the sale was made by an under-sheriff; that no claim for the mortgage—indebtedness was ever filed with the executrix of the estate, and that the sale, accordingly, was wholly void as to lots 17 and 18 above mentioned. The defendant accordingly prayed that the petition be dismissed and that she have such other and further relief as to the court might appear to be just and equitable. The proof showed the occupancy as a homestead as alleged, and the facts as to the inventories and appraisements, in addition to the facts already mentioned. The original inventory and appraisement sets forth real estate, including the homestead premises of the value of $95,836; personal property of the value of $34,120, and debts of the amount of $129,991, leaving a deficiency of $35.00. Other pertinent facts will be stated hereafter. Trial of the case was had before the court and the jury; the court directed a verdict for plaintiff, and judgment was rendered thereon. From that judgment the defendant has appealed.

1. The plaintiff, to show its title, introduced in evidence the deed executed to it by Sam Jensen, undersheriff of Fremont County, Wyoming. The deed

was objected to as incompetent evidence on the ground that no undersheriff is, under the laws of this state, authorized to conduct a sale of foreclosure, or to execute a deed pursuant thereto. Section 71-209, Rev. Stat. 1931, provides that the sale "shall be made by the person appointed for that purpose in the mortgage or by the sheriff or deputy sheriff of the county." Sec. 71-212 provides that "the sale may be made by the sheriff, or deputy sheriff, or by the mortgagee at the option of the latter." But it is argued that an undersheriff is not a deputy sheriff. That contention cannot, we think, be sustained, and is not supported by any authority, in point, cited to us. The only reference in our Code to an undersheriff is in section 30-507, which, so far as this case is concerned, is substantially a re-enactment of Sec. 1465, Wyo. C. S. 1920. It provides that an undersheriff shall qualify as required by law of deputy sheriffs and shall be sheriff in case of the death, resignation or other disability of sheriff. His duties are not otherwise defined, and it appears to be contended that he cannot perform the duties of a deputy, and is merely designated as the person who shall, upon the contingencies specified, succeed to the office of sheriff. He draws a substantial salary, and we hardly think that the legislature would have given him that merely for a contingent possibility of becoming sheriff. An undersheriff has always, in every county of the state, performed the duties of a deputy, and has always been regarded as qualified to act for the sheriff the same as a deputy. There can be no doubt, we think, that he is simply what has been termed a general deputy, slightly more important than a simple deputy by reason of the fact that he is qualified and designated by law as the particular deputy who, under certain conditions, shall become the sheriff. Shirran v. Dallas, 21 Cal. App. 405. 132 Pac. 454, 458, 462;

Allen v. Smith, 12 N. J. L. 159, 162; Meyer v. Bishop, 27 N. J. Eq. 141, 142; see 57 C. J. 730.

2. It is argued also that the plaintiff herein failed to show a lawful foreclosure and the unlawful possession of the defendant. Just what counsel means by this we do not know, unless reference is again made to the fact that the undersheriff executed the deed. It is said in 41 C. J. 994 that the recitals in the deed to the purchaser are generally taken as prima facie, but not conclusive, evidence of the regularity of the sale and of the facts recited. This rule was applied by this court in the case of Matthews v. Nefsy, 13 Wyo. 458, 81 Pac. 305, 110 A. S. R. 1020, which, as the case at bar, was an action in ejectment. The plaintiff, accordingly, showed a prima facie right of possession.

Again, it is argued that the affidavit of the undersheriff, which was made pursuant to the sale, recites that he acted as auctioneer, and it seems to be argued that if he acted as auctioneer he did not act as deputy sheriff, and that, accordingly, he acted merely as the agent of the holder of the mortgage, and that the latter, and not the auctioneer, should have executed the deed. We do not think that there is any force in the contention. A person who conducts a sale acts of course, as is commonly said, in the capacity of an auctioneer, but that by no means shows that he may not at the same time be a deputy sheriff, or other person authorized by law to conduct it.

3. It is defendant's contention that there was a defect of parties in this action, and that Mrs. Delfelder, as executrix, should have been made a party hereto, in view of the fact that she was in possession in her representative capacity. It is not necessary to say much as to this contention, except that the point was not raised in the court below either by demurrer or answer, and the defect, if any, was accordingly waived. Sec. 89-1008, Rev. St. 1931. She was in pos-

session, and in fact claimed the right of possession not in her capacity as executrix, but in her individual capacity, asserting that the property was her homestead. That showed that she was a proper party defendant. See Arnold v. Brechtel, 174 Mich. 147, 140 N. W. 610; Bradt v. Church, 110 N. Y. 537, 542, 18 N. E. 537; Illinois Steel Co. v. Kohnke, 151 Wisc. 410, 138 N. W. 995; 19 C. J. 1093. Plaintiff having made a prima facie showing of the right of possession of the property, it also, especially in view of defendant's contention, made a prima facie showing that she was in the unlawful possession thereof

4. In the notice to foreclose the mortgage, the sum of $3500 was stated to be due as attorney's fees. The original mortgage was for $225,000, which, as stated, was reduced to the principal indebtedness of $70,000 by reason of the sale of live stock. The mortgage provided for a total attorney's fees of $11,250.00, and the $3500 mentioned in the notice of foreclosure of the real estate was the proportionate amount thereof. The actual attorney's fee paid was $1250.00. It is argued that it was fraudulent to insert the sum of $3500 in the notice of foreclosure when only the lesser amount was actually paid. No cases are cited, nor can we understand upon what any such contention could be based. The contract itself provided for the attorney's fee of the larger amount, and it is hard to understand how the insertion of a contractual amount in the notice of foreclosure can be said to be fraudulent so as to vitiate the sale, even though it might be excessive and though, if actually charged, a right of recovery of the excessive amount might exist. When the notice of foreclosure, prepared by counsel for the holder of the mortgage, was given, he in all probability did not himself know, and reasonably so, as to what amount would or should ultimately be charged for his services in the foreclosure, and we

can see nothing dishonorable in his conduct. In fact, since he made only a charge of $1250, which is not claimed to be excessive, when he had at least a colorable right to charge $3500, he should be given credit for a high sense of ethical conduct. The mortgagor, of course, could not be charged with a higher amount, at least since the enactment of Sec. 71-214, Rev. St. 1931, in 1927. The principal indebtedness on the mortgage appears to have been at the time of foreclosure over $79,000. The property brought, at the sale, the sum of $72,000. If we add thereto the sum of $1250.00, instead of $3500, there was still a large deficiency, so that the insertion of the latter amount in the notice of foreclosure could not possibly have prejudiced the defendant.

It is further claimed that no amount of attorney's fee could be charged. We are cited to the case of O'Keefe v. Foster, 5 Wyo. 343, 40 Pac. 525. But the case is not in point. That was an action in court, and the decision was based on a statutory provision, not in force since 1931, that in such action no counsel fees should be recovered unless a claim for the indebtedness had been presented to the executor or administrator. In the case at bar the foreclosure was not by action in court, but by advertisement under a power of sale. But it is argued that surely this court can not hold that where an attorney's fee cannot be recovered in an action, it may nevertheless be recovered in any other proceeding. But we are not the lawmakers. Section 71-201 and subsequent sections explicitly allow and always have allowed, a charge of an attorney's fee in case of foreclosure by advertisement, and have made no exception thereto in case the mortgagor should die. The legislature not having made an exception, we cannot do so. We might add, that we think it clear that the practice and understanding on the part of the bar of this state has at

all times been contrary to the contention of counsel for defendant, and the incorrectness thereof is emphasized by the fact that the legislature now, apparently at least, allows an attorney's fee even when the mortgagor is dead, in case the foreclosure is by action, though no claim is filed against the estate, provided recourse in such case against the general assets of the estate is waived and the claim is confined to the mortgage security.

5. We come then to the main question in the case, namely, whether or not the foreclosure of the mortgage was valid without presentation of the claim of the assignee of the mortgage to the executrix of the estate, in view of the fact that the defendant resided on the premises in controversy, and claimed the same, as her homestead under the statute. The point has given us an infinite amount of trouble. We have continually held that the laws relating to a homestead should be liberally construed. And in view of that fact we have labored long, and have delayed the decision in this case, with the hope of finding some way to save the homestead for Mrs. Delfelder without doing undue violence to other principles of law and equity involved in the case. With what result, will be seen later.

The statutes, which have more or less of a bearing herein, are as follows:

Sec. 88-3001, R. S. '31: "If the homestead held prior to the death of the decedent be returned in the inventory appraised at not exceeding twenty-five hundred dollars in value, the court or judge must, by order, set it off to the persons in whom the title is vested by this chapter. If there be subsisting liens or incumbrances on the homestead, the claims secured thereby must be presented and allowed as other claims against the estate. If the funds of the estate be adequate to pay all claims against the estate, the claims so secured must be paid out of such funds. If the funds of the

estate be not sufficient for that purpose, the claims so secured shall be paid proportionately with other claims allowed, and the liens or incumbrances on the homestead shall only be enforced against the homestead for any deficiency remaining after such payment."

Sec. 88-3103 (in part): "All claims whether the same be due, not due, or contingent, must be filed or exhibited within the time limited in the notice and any claim not so filed or exhibited is barred forever * * * *."

Sec. 88-3109: "No holder of any claim against an estate shall maintain any action thereon unless the claim is first presented to the executor or administrator, except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto, where all recourse against the property of the estate is expressly waived in the complaint."

The statutes above mentioned were originally attempted to be modeled after the California law, section 88-3001 after section 1475 of the Code of Civil Procedure of that state. In California, however, two kinds of homesteads were recognized, one which was selected and *recorded* prior to the death of the decedent, and a probate homestead—one not so selected. but set off to the survivor by the probate court. The provision as to filing of claims was contained in section 1475 supra, the section referring to a homestead so selected and recorded. And it was held that when the homestead was of that character, an action in court to foreclose the mortgage was barred, unless the provision as to filing of claims was complied with, and that the homestead, if only of the statutory value, vested in the survivor without any order setting it apart. Hinkel v. Crowson, 188 Cal. 378, 206 Pac. 58, and cases there cited; Spencer v. Stewart, 202 Cal. 695, 262 Pac. 331. On the other hand it was held that the requirement of presentation of claims was

not applicable in the case of probate homesteads. Mc-Gahey v. Forrest, 109 Cal. 63, 41 Pac. 817; In Re Huelsman's Estate, 127 Cal. 275, 59 Pac. 776; Browne v. Sweet, 127 Cal. 322, 59 Pac. 774. In this state we have no homesteads recorded prior to the death of the decedent. It is selected by occupancy. The fact of recording it, and giving definite notice to the world, cannot be considered a distinction altogether without value, and the California cases holding that claims must be presented as above mentioned cannot be considered decisive herein. Further by reason of the fact that these cases deal with actions in court and not with a situation such as presented here, which does not involve an action, they cannot be considered in point. This will appear more clearly as we go on. We might incidentally mention the fact that it was held in Athearn v. Ryan, 154 Cal. 554, 98 Pac. 390, and Weber v. McCleverty, 149 Cal. 316, 86 Pac. 706, that in case of a trust deed—which is at least very similar to a mortgage with a power of sale—the requirement as to presentation does not apply. The reasoning of the court in these cases is not altogether satisfactory, since it is based on the theory that a trust deed is neither a lien nor an encumbrance. But the legislature did not amend the law after Weber v. McCleverty was decided in 1906, but on the contrary in 1931 repealed section 1475 of the Code of Civil Procedure. That section was re-enacted as section 735 of the Probate Code, but with the requirement of filing claims entirely left out. C. 281, Laws of 1931. So that it would seem that such requirement as to filing of claims in the case of a mortgage has been found to be impracticable or unsatisfactory.

A. It is argued by counsel for the plaintiff that the requirement as to filing of claims applies only to a homestead which has been returned in the inventory of a value not exceeding $2500, in view of the fact

that section 88-3001, which requires such filing, makes specific reference only to such homestead, while section 88-3002, which deals with homesteads over the value of $2500, makes no reference to the filing of any claims. At least partially the contrary to this contention was decided in the case of California Bank v. Stephens, 144 Cal. 659, 79 Pac. 379, for it was held in that case that a claim must be filed not only when the homestead premises do not exceed the statutory value, but also when they exceed it, and when they may be divided so that part thereof, not exceeding the statutory value, may be set off as a homestead. In this case the property occupied as a homestead cannot be divided without injury, and what the law should be in such case has never been specifically decided, so far as we can find. The point is not free from doubt. The statute provides that in case the property is over $2500 in value and cannot be divided without injury, the appraisers shall, after affixing the value thereto, report the facts to the court, and that in such case the property may be sold, and the proceeds divided among the parties entitled thereto. Suppose the property which cannot be divided without injury is of the value of $25,000. Is the mortgagee nevertheless in such case, or in any similar case, forbidden to exercise his power of sale? The statute does not say so, but on the contrary the sale by the court is apparently permissive and not mandatory To some extent the questions and doubts arising out of the situation have been answered. It has been held that if the claim has been filed as required by section 88-3001 foreclosure proceedings may be commenced. Vandall v. Teague, 142 Cal. 471, 76 Pac. 35. Again, in Jones v. Losekamp, 19 Wyo. 83, 114 Pac. 673, it was held that a lease to premises occupied as a homestead is good as to that part which does not constitute the statutory home-

stead. The effect of that decision, as applied in this case, would seem to be that if a homestead is of greater value than $2500, a mortgage against it, and a sale under the mortgage, is perfectly valid as to such excess, even though no claim was filed with the executor. And that, in fact, has been expressly held in Bank v. Stephens, supra, and see Gregg v. Bostwick, 33 Cal. 220, 91 Am. Dec. 637. But that does not dispose of the question as to the homestead right. No good reason has been pointed out why the legislature should require the filing of a claim when the homestead premises are of one value, but should not require it when of another value, nor has it been pointed out why or how the administration of the law would be more practicable in one case than the other, and the writer hereof is, accordingly, not prepared at this time to hold with the contention of plaintiff on this point.

B. There is some argument in the briefs of counsel for the plaintiff in reference to the unconstitutionality of the law giving the exemption herein claimed. Counsel have not sufficiently elucidated the subject for us to grasp what they, perhaps, intend to assert, and if there is any merit in the argument, we are not in position at this time to pass upon it. They further contend that in view of the fact that the defendant, in the mortgage executed by her, waived each and every exemption which she might claim, she is bound by that provision. The contention cannot be upheld, although, as hereafter shown, the fact of such waiver cannot be wholly ignored herein. The mortgage was taken subject to the existing statutory provisions. It was an executory contract. The homestead exemption which she now claims could arise, under the statute, only by an event which occurred subsequently, and she could not waive that exemption in advance. The rule is stated in 25 C. J. 111 as follows:

"It is a rule nearly universal, based on reasons of public policy, that a debtor's waiver of his exemption right, by stipulation of an executory contract, is absolutely void."

The reason of the rule is aptly stated in the case of Industrial Loan & Inv. Co. v. Superior Court, 189 Cal. 546, 209, Pac. 360, 361, as follows:

"The rule is that the debtor cannot waive the privilege of claiming the exemption in advance. The rule is based on the theory that exemption laws are made for the benefit of the debtor and his family, and that it is against public policy for him to waive any benefits of the law in advance of the time when it is necessary for him to do so. If it were not for this rule, it is said, creditors would insist on inserting the clause waiving exemption laws in every executory contract. These would usually be made at a time when the debtor was in need of money, and would be enforceable at some time in the future when, perhaps, he or his family would require the exemption. By doing so he would waive practically all the benefits of the exemption law. We approve of this doctrine, and hold that such a waiver cannot be enforced. This rule has been followed by all the states except Pennsylvania."

The reasons here given are persuasive. Homestead rights should be protected as far as possible. Contractual rights should not be permitted to nullify a public policy expressed as to exemptions. It is better for the nation as a whole, and for creditors and debtors alike, that all should have something than that there should be a class of persons who have nothing. In fact, indiscriminate borrowing on the part of debtors, who, for the time being, are willing or anxious to sacrifice even their pittance of exemptions, on the one hand, and the willingness or eagerness of creditors to extend credit, particularly in times of plenty, even in doubtful cases, on the other, cannot, in the long run, but create poverty and want when the time of

reckoning comes, and infinite trouble for both credi-·
tors and debtors, and should not, accordingly, be en-
couraged, in contravention of a public policy ex-
pressed by the legislature.

We have, of course, a peculiar situation in this case.
Defendant had a homestead right before the death of
Mr. Delfelder. So far as that right is concerned, it
does not seem to come within the rule just stated,
and would seem to have been fully waived. The
only right not waived is that to which she was enti-
tled by virtue of the statutes in our Probate Code.
That, it is true, is to some extent at least, under our
peculiar system of acquiring homesteads by occu-
pancy (not considering a case when property is se-
lected in lieu of a homestead), dependent upon the
right acquired before the decedent's death. Hence the
two rights are not easily separable, and the only way,
apparently, by which they can be separated in the
case at bar, is to treat the homestead right under the
Probate Code as a new and conditional one, dependent
upon the fulfillment of the steps required to be taken
under the statute, and, as will be seen more fully
hereafter, the necessity to see that these steps were
taken would seem to be upon the person entitled to
the right.

C. Counsel for plaintiff also contend that the
statute itself has declared the effect, namely, that no
action in court to foreclose can be brought, and that
hence the intention of any other or further effect
cannot be attributed to the Legislature. Section 88-
3109, supra, provides that no holder of any claim
against an estate shall maintain an action thereon,
unless the claim is presented. That section, of course,
cannot be held to bar foreclosure by advertisement.
Section 88-3103, supra, provides that if a claim is
not filed it is forever barred. The term "barred" is
a technical term, and is applied to actions or suits.

Skinner v. Skinner, 7 N. C. 575; Wilson v. Knox County, 132 Mo. 387, 34 S. W. 45; 477; Knox County v. Morton, (C. C. A.), 68 Fed. 787; Cowan v. Mueller, 176 Mo 195, 75 S. W. 606; Bouvier's Law Dict. (3rd Rev. by Rawle) 324. Hence that section, too, cannot be held to bar foreclosure by advertisement. In fact, it is generally held that statutes of limitations governing actions or suits have no application to foreclosure of mortgages by the exercise of a power of sale therein contained, 41 C. J. 944. Hence a part of the membership of this court believes that no claim needs to be presented in such a case, thus arriving at the same ultimate conclusion in connection with mortgages containing a power of sale as the California courts, only by a different method. But while it must be conceded that the existence of the power of sale has its bearing herein, as will be seen later, no persuasive reasons have so far been advanced that it is wholly unaffected by the statute. If the fact that the legislature merely provided one effect is necessarily exclusive of other effects, it is so under the doctrine of expressio unius est exclusio alterius. It is indeed stated in Lewis' Sutherland on Statutory Construction, citing Perkins v. Thornburgh, 10 Cal. 189, that "when a statute specifies the effects of a certain provision, courts will presume that all the effects intended by the lawmaker are stated." The California case cited, which refers to other cases, bears out the text. Still it is only a presumption, and the fact that foreclosures in this state have generally been by advertisement under a power of sale, and that, probably, the legislature did not intend to limit the provision for filing claims to only a small class of cases, makes it at least doubtful that the foregoing rule should be considered decisive, and would seem to suggest a construction that claims should, ordinarily, be filed even in cases in which, as in the case at bar, a power of

sale is given in a mortgage.

D. What then is the effect of the failure to file the claim? We cannot in any event, as stated before, call to our aid, in the solution of this problem, either section 88-3103 or section 88-3109, supra, but must consider section 88-3001, supra, as standing by itself. That section provides that a claim secured by homestead premises must be filed, and the language is mandatory in form. It does not, however, state what the effect of failure to do so shall be, and that seems to be a fact of some importance. Lewis' Sutherland Statutory Construction, Sec. 621. The purpose and intention of the section, as a whole, is clear, namely, that, if there are funds aside from the homestead, from which the lien or encumbrances may be satisfied, then that shall be done, so far as possible. But suppose that there are no such funds; was it the intention of the legislature, in view of the mandatory form of the language, to make the non-filing of the claim fatal nevertheless? Counsel for defendant take that position. But the question is not as easy as counsel seem to think. There is an old adage, applied by the courts time and again, that where the reason of the rule ceases, the rule itself ceases. That adage cannot be lightly disregarded, and should be applied, unless the legislative intent is shown to be to the contrary. The term "must" has many times been construed as directory and not mandatory. 44 C. J. 1499, notes 63-67. And while, on the one hand, homestead laws should be liberally construed, we must not forget that in the case at bar we have a right not dependent upon any statute, but a contractual right, which existed at common law, and which was vested at the time of Mr. Delfelder's death, and there is a rule that statutes in derogation thereof are not to be liberally, but strictly construed, 59 C. J. 1125, 1127. Here, accordingly, we have two conflicting rules, and

it is apparent that, in order to determine what construction we should give to the statute, we must look to its contents as a whole. A violation of a statute in regard to sales of property under a mortgage does not necessarily make the sale void. Thus the rule seems to be uniform, so far as the cases which we have been able to find hold, that a violation of a statute or contract that the homestead shall be sold only after exhausting the other property does not make the sale void, but voidable only, and that the defect may be waived. Weber v. McCleverty, 149 Cal. 316, 86 Pac. 706; Lloyd v. Frank, 30 Wisc. 306; Phelps v. Western Realty Co., 89 Minn. 319, 94 N. W. 1085; Stevens et ux v. Myers, 11 Iowa 183.; see 41 C. J. 974. The same idea would seem to be embodied in the decision in Miller v. McCarty, 47 Minn. 321, 30 N. W. 235, 28 A. S. R. 375, where the court held that where a mortgage covers both exempt and non-exempt property, the mortgagor may insist upon the sale of the non-exempt property first, but that this rule "will not be enforced to the displacement of a counter-vailing equity, or where for any special facts, it would be inequitable to enforce it. It is a right which the debtor must seasonably assert for himself. The mortgagee owes him no duty to assert it for him, or to institute proceedings to protect it. The equity is simply one which the law will protect upon seasonable application of the mortgagor, where the mortgagee proceeds to enforce his mortgage." And while not in point, and without committing ourselves to the rule announced under the facts therein, but as throwing at least some light on the subject before us, we might quote what is said in the case of Church v. Bank, 255 Mich. 595, 238 N. W. 192, 194, and Smith v. Spradlin, 136 Ark. 204, 206 S. W. 327, 328. Both cases involved a sale of exempt property on execution, but not the points mentioned in Altman v. District Court,

36 Wyo. 290, 254 Pac. 691, nor do we intend to modify anything held in that case. In the former of these cases, the court, holding that a sale of exempt property is not void, but at most only voidable, said:

"Was the execution sale void or only voidable? Beyond question one entitled to an exemption in property may, if he sees fit, waive such right in the event of a levy and execution sale. Numerous decisions of this court hold that an officer who sells exempted property, or the judgment creditor for whom the sale is made is liable to the owner for his resulting damage. * * * This must be on the theory that the one entitled to the exemption ratifies the sale. We think it must follow that such a sale, is not absolutely void, but at most only voidable, depending on the surrounding circumstances."

In the Arkansas case, the court, among other things, said:

"The facts stated in the complaint show that the lands, which afterwards proved to be a homestead, were levied upon and sold under an execution issuing out of the circuit court based upon a valid judgment. Prima facie, the property of a judgment debtor is subject to execution. The homestead right or the right to claim a homestead as exempt from sale under execution is a personal privilege. 'As against all the world except the debtor and his wife,' as is said in Snider v. Martin, 35 Ark. 139, 17 S. W. 712, "the sale is valid, and it is valid against them, unless they, or one of them, elect to defeat it. If they neglect or refrain from asserting such right, the debtor's title vests in the purchaser. It cannot be said, therefore, that nothing passes; it is more nearly correct to say that the purchaser takes a defeasible estate.' "

In Browne v. Sweet, 127 Cal. 332, 59 Pac. 774, it was held that a claim need not be presented where all the property is set apart to a widow before suit of foreclosure is commenced; in other words, that

where there is a virtual impossibility, there is an implied exception. And it is held in a number of cases that the meaning of general language may be restrained by the spirit, and may be construed to admit implied exceptions. 59 C. J. 968. It would seem that an exception ought to be implied just as readily where the act required to be done is useless, subserves no purpose whatever, and when the non-compliance results in no harm, as when it is impossible. That seems to be distinctly recognized by Lewis' Sutherland, supra, section 629, where it is said that "provisions are directory * * * where the departure from the statute will cause no injury to any person affected by it." In this connection, while there are numberless statements as to the construction of statutes, some of which may not be altogether reconcilable, it may not be amiss to cite a few of them. In 59 C. J. 964, it is said:

"In pursuance of the general object of giving effect to the intention of the legislature, the courts are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof, it being generally recognized that whatever is within the spirit of the statute is within the statute, although it is not within the letter thereof, while that which is within the letter, although not within the spirit, is not within the statute. Effect will be given the real intention even though contrary to the letter of the law."

In Chauncey v. Dyke Bros., 119 Fed. 1, 9, 55 C. C. A. 579, it is said:

"We are aware that some courts have at times expressed in strong terms the necessity of pleading and enforcing statutes literally without regard to consequences. Some of these utterances have been called to our attention. But this doctrine of literalism which clings to the letter of a statute and ignores its purpose is not well calculated to promote the ends of

justice. It is not the duty of a court of justice to perpetuate mistakes inadvertently made by the lawmaker by a blind adherence to the letter of the law, when the purpose of the law is apparent. Legislative bodies are not always fortunate in the use of language, but if careful attention is paid to all the provisions of a statute as well as to the conditions which led to its enactment, little difficulty will generally be experienced in ascertaining what was intended. When the purpose is disclosed, it should be given effect, since whatever is within the intention of the lawmaker is as much within the statute as if it was within the letter."

See also Ryegate v. Wardsboro, 30 Vt. 746, 749.

It is true that in Bollinger v. Manning, 79 Cal. 7, 21 Pac. 375, it was held that the claim must be presented, though there are no other assets—though, in other words, the filing of the claim would subserve no good purpose. The case, if not inconsistent with the later case of Browne v. Sweet, supra, may, in any event, be clearly distinguished from the case at bar. It may be explained by the rule stated in 59 C. J. 1075 as follows:

"Some authorities have made the question (whether a statute is mandatory or directory) to depend on the presence or absence of words declaring the effect of a failure to comply with the statute, holding that a statute which requires certain things to be done or provides what result shall follow a failure to do them is mandatory, but that if the statute does not declare what result shall follow a failure to do the required act, it is directory."

The case of Bollinger v. Manning was an action in court, and the statute in California, as in this state, provides that if a claim is not filed, an action in court is barred. In other words, the result of not filing a claim is specifically provided. The case at bar involves no action in court; hence, as already heretofore

stated, section 88-3001, providing for filing claims, must, so far as this case is concerned, be held to make no provision as to the result of non-compliance with the statute, and hence under the text above stated, would, in so far as applicable to the case at bar, be construed to be directory. The cases heretofore decided by this court to the effect that the statute requiring the filing of claims are mandatory are based on Section 88-3103, not applicable here as above stated, and the cases are not, accordingly, in point.

The purpose of our statute, as stated before, is that, if there are other funds out of which the lien against a homestead may be satisfied, then such funds shall be first applied. If such purpose cannot be fulfilled, then to require an idle ceremony nevertheless would seem to be contrary to the spirit of the law. The purpose is identical with that manifested in those statutes, already referred to, which require other property to be exhausted before resorting to the homestead. A violation of the statute in those cases makes the sale not void, but at most voidable. If these decisions are correct, it would seem to follow that we must arrive at the same conclusion in the case at bar.

That conclusion appears to follow also from a consideration of the subject from another angle. The mortgagors, as stated, conveyed and waived their homestead right when they executed the mortgage and gave a power of sale. That fact cannot be wholly overlooked. If Mr. Delfelder had lived, the foreclosure would, of course, have been perfectly valid. If then it was void as to the premises here in controversy, it is rendered so only by a collateral event, and we should hesitate to declare that to be the result in such case in the absence of an express statute to that effect. There appear to be in some states express statutory provisions suspending the

execution of a power of sale during the course of administration. 41 C. J. 927. But we have no such express statute. And the prevailing rule is clearly to the effect that a power of sale in a mortgage is coupled with an interest, and is not revoked or suspended by the grantor's death. 41 C. J. 927; Cleveland v. Bateman, 21 N. M. 675, 158 Pac. 648, Ann. Cas. 1918E, 1011, where a number of authorities are reviewed. There is not a syllable in our statute relating to the revocation or suspension of the power of sale. There is simply the requirement of a collateral fact, namely, the filing of a claim, and while the noncompliance with that collateral fact may be an irregularity, it is too much to ask, we think, that we should declare that the effect is that the sale is totally void, particularly in view of the fact that Mrs. Delfelder, the main party interested, herself granted the power of sale and is still living.

Moreover, as already stated, whatever right she had up to the time of the death of Mr Delfelder, she had waived. The statute stepped in and gave her, as it were, a new right under certain conditions. The premises themselves, occupied by her, did not constitute her homestead right. These premises were appraised at $5000. They could not be divided without injury. Hence the most that defendant had was an interest therein to the extent of $2500. Jones v. Losekamp, supra; Estate of Herbert, 122 Cal. 329, 54 Pac. 1100. True, in 1931 the premises were appraised at the sum of $2500, but it can hardly be held that foreclosure proceedings instituted and completed can be held to be void by reason of something done long thereafter. In Briscoe v. Vaughn, 103 Tenn. 308, 52 S. W. 1068, it was said of a homestead similar in character as that here involved, that "before its assignment it is a mere right which hovers over the whole land, and does not rise to the dignity of an es-

tate." And in Nelson v. Theus, 5 Tenn. App. 88, 94, it was said that before the assignment of the homestead a widow does not have an estate in the land or an interest therein that can be conveyed. But whatever may be the character of the right it would seem at least that when the premises, not properly divisible, are appraised at more than the statutory value, the homestead right cannot be perfected without some action on the part of the court or its officers, for as said in Jarrell v. Payne, 75 Ala. 577, 579, "when the tract consists of more acres or is of greater value than can be claimed as exempt homestead, there must be a selection of the part claimed. This is indispensable, for otherwise it cannot be known of what the homestead consists, nor whether the claim is excessive." See also 29 C. J. 1029. Now what is the situation when nothing is done to perfect that right till after foreclosure of a mortgage under power of sale? Though the holder of the mortgage had notice of the rights of the defendant, still it also knew that without some steps being taken, the homestead right would not be perfected. And it would seem that if never perfected during the course of administration, it would be waived. That appears to be distinctly held in Dake v. Sewell, 145 Ala. 582, 39 So. 819, and Beck v. Karr, 209 Ala. 199, 95 So. 881. Hence whether or not the homestead right would ever be perfected was in a state of uncertainty at the time of the foreclosure herein, and if it was waived in case it was never perfected, then, of course, foreclosure under the mortgage would have been perfectly good. We hardly think that we can hold that the defendant owed no duty to do anything whatever, and that the holder of the mortgage was bound, at its peril, to see to it that the defendant would not waive her right and that all steps necessary to protect it were taken, particularly in view of the fact that defendant had, in

the mortgage, already voluntarily waived her homestead rights. It might be argued that the defendant took no steps because she may have relied upon the fact that no claim was filed with the estate, and if we concede that this possibility should be given effect, that would modify to some extent what we have just said, although we cannot see how it could modify other portions of this opinion. Moreover, the likelihood of the conjecture is not great, in view of the fact that the second appraisement, looking to the determination of the defendant's homestead right, was not made until more than ten years after the death of the decedent, and no affirmative move to assert that right against the holder of the mortgage or the purchaser under the foreclosure sale was made until after that time. Bearing in mind, accordingly, all that we have said on the point now under discussion,, and considering it as a whole, we think that we must hold that the mortgage-sale held herein was not void, but at most voidable, depending on the circumstances.

E. The essence of the defense herein is to have a sale under a mortgage set aside. Such a proceeding is one in equity. 41 C. J. 1023; Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073. It is set up in an action heretofore called one at law. But that may be done in our state where law and equity are blended and amalgamated. Upjohn v. Moore, 45 Wyo. 96; 16 Pac. (2d) 40, 41; Holly Sugar Corp. v. Fritzler, 42 Wyo. 446, 296 Pac. 206; Bamforth v. Ihmsen, 28 Wyo. 282, 300, 204 Pac. 345, 205 Pac. 1004. However, the equitable nature of the defense is not thereby destroyed. And where, as in this case, the sale was not absolutely void, but at most voidable, it would seem that it should not be set aside unless she was prejudiced or damaged by the failure of the holder of the mortgage to file a claim as required by section 88-3001, supra. Humboldt v. March, 136 Cal. 321, 68 Pac. 968; Summer-

ville v. March, 142 Cal. 554, 76 Pac. 388, 100 A. S. R. 145; Weber v. McCleverty, supra; Equitable Life Ins. Co. v. Ryan, 213 Iowa, 603, 239 N. W. 695; Stevens and wife v. Myers, supra; Lloyd v. Frank, supra; Phelps v. Western Realty Co., supra; Mulroy v. Trust & Sav. Bank, 165 Minn. 295, 206 N. W. 461. Now, if we may take the facts disclosed by the record as correct, we find that, unfortunately, the estate of the decedent was insolvent The real estate was all sold under the mortgage. The personal property amounted to $34,000, from which, of course, must be deducted the expenses of administration and the allowances made to the widow, the amounts of which do not appear The indebtedness, outside of the mortgage indebtedness, amounted to approximately the sum of $64,000. The indebtedness under the mortgage was, at the time of the sale, approximately $80,700. The sale brought $72,000, and if we deduct $5000, the appraised value of the homestead, the sum of $67,000, leaving a deficiency of approximately $13,-700. This deficiency would have been entitled to be paid proportionately with the other debts out of the personal property, namely, about 13-64th thereof, bringing about $7000, or less, leaving still a deficiency of approximately $6,700, a sum greater than the value of the homestead premises. To assume that the homestead brought only $2500 or less would not change the result. It is apparent, accordingly, under the facts, that even if the claim had been filed, it would not have benefited the defendant.

Of course, we might speculate on what might have been done, but was not done. The indebtedness was not so large during 1921, and if the sale of the lands had been made during that year, (without it nothing would have availed), and if it would have brought the same amount as it brought in 1924, the goal to save the homestead would not have been so far. But

even then, in addition to the amount realized from the sale of the land and the payment of the proper proportion from the personal property, a payment of more than two thousand dollars on the mortgage would have been necessary in order to save the homestead premises, and to this amount would be required to be added an additional sum, probably not small, the size depending on the amount of expenses of administration and widow's allowances. Of course we are now speculating. There are too many "ifs", and we cannot, ordinarily at least, decide a case on mere possibilities. Pac.-Wyo. Oil Co. v. Carter Oil Co., on rehearing, 31 Wyo. 452, 460, 228 Pac. 284. But granting that this possibility should, in some cases, be held to warrant relief, it cannot be held to do so in this case. The homestead could not have been saved, as stated above, without the sale of the farm lands. Should blame be fastened on the assignee of the mortgage because the foreclosure was not started sooner? We do not think so. Leaving out of consideration the spirit of the times which censures rather than encourages timely foreclosures, we find in the case at bar the fact that the defendant herself, as executrix of the estate, at four different times gave, for the purpose of extending the time of payment, renewal notes for the original indebtedness under the mortgage, which operated, if not entirely so, at least almost like an allowance of the claim, even though not based on a formal claim filed with the estate. The first renewal note was given before, the last long after, the time of filing claims against the estate had expired. She was, accordingly, at least equally to blame for not proceeding more promptly in attempting to determine whether or not the homestead could have been saved. Suppose, then, the claim had been filed. By reason of the extension of the notes, the holder of the mortgage was unable to foreclose. Thus,

as a result of defendant's own act, taxes accrued, interest accumulated, and the amount ran up to that ultimately found to be due, and the possibility of saving the home became out of the question, as already seen. The fact that these extensions were made by the defendant in her capacity as executrix should not, we think, make any difference. We have, in considering this matter, earnestly attempted to find out whether she might not, in some way, have been damaged by the non-filing of the claim ,but have been unsuccessful by reason of the stubborn facts confronting us, and counsel have not attempted to show us the way. It has not been necessary to consider the situation arising out of the fact that there is still a large deficiency due to the holder of the mortgage.

We are constrained, accordingly, though not without regret, to affirm the judgment of the trial court. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur specially, as mentioned in their separate opinions.

RINER, Justice. (Concurring specially).

My views concerning this case coincide with those expressed by Mr. Justice Blume, except as hereinafter indicated.

The chief contention of plaintiff in error appears to be based upon the provisions of sections 6881 and 6889 of the Comp. St. of Wyo. 1920, as applied to the facts of this case. The sections of the older compilation of our statutory law will be used herein, as the points for decision arise under transactions occurring before they were superseded by the Wyo. Rev.

St. 1931.  The section first cited provides:

"If the homestead held prior to the death of the decedent be returned in the inventory appraised at not exceeding  twenty-five hundred dollars in value, the court or judge must, by order, set it off to the persons in whom the title is vested by the preceding section.  If there be subsisting liens or incumbrances on the homestead, the claims secured thereby must be presented and allowed as other claims against the estate.  If the funds of the estate be adequate to pay all claims against the estate, the claims so secured must be paid out of such funds.  If the funds of the estate be not sufficient for that purpose, the claims so secured shall be paid proportionately with other claims allowed, and the liens or incumbrances on the homestead shall only be enforced against the homestead for any deficiency remaining after such payment."

The second reads:

"All claims arising upon contracts, whether the same be due, not due, or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever; provided, however, that when it is made to appear by the affidavit of the claimant, to the satisfaction of the court, or a judge thereof, that the claimant had no notice as provided in this chapter, by reason of being out of the state, it may be presented at any time before a decree of distribution is entered."

The record inter alia shows the following: That the plaintiff in error and her husband executed certain promissory notes  representing an indebtedness on their part to John W. Hay of $225,000, and secured the same by mortgage deed, dated January 28, 1921, containing a power of sale and conveying, among other lands, the premises in dispute; that the mortgage deed thus executed by plaintiff in error and her husband contained an explicit waiver and release

of "any and all rights, benefits, privileges, advantages, and exemptions, under and by virtue of any and all statutes of the State of Wyoming providing for the exemption of homesteads from sale on execution or otherwise"; that Hay, under date of March 24, 1924, assigned said mortgage deed to the American National Bank of Cheyenne, the assignment recorded March 26, 1924, reciting that on that date there remained due an indebtedness of $70,000; that the husband of plaintiff in error died, plaintiff in error qualified as the executrix of his last will and testament, and an inventory of the property of her deceased husband was filed June 15, 1921, in the District Court of Fremont County, Wyoming, wherein it was stated concerning the property in controversy, "Lots 17 & 18, block 24, town of Riverton, Wyoming, this is residence and homestead—$5,000," the appraisers thereby fixing the value thereof at the sum last mentioned; that there was proof made that no claim of any kind was ever presented against the estate or to plaintiff in error as executrix, either by the American National Bank of Cheyenne, or by John W. Hay, aforesaid; that on June 2, 1924, the mortgage above mentioned was foreclosed through the exercise of the power of sale therein contained; that on December 19, 1924, a foreclosure deed was issued to the American National Bank of Cheyenne, thus furnishing the basis of the title under which defendant in error asserts its rights as grantee of the bank.

The gist of the contention made for plaintiff in error seems to be that, inasmuch as the claim for the indebtedness secured by the mortgage as detailed above was never presented to her as executrix of the estate of her deceased husband, the mortgage foreclosure and the deed issued pursuant thereto were void so far as they undertook to affect the two lots

above mentioned, valued at $5,000. Camp v. Grider, 62 Cal. 20, and other California cases are cited in support of the view.

In that state, it is held that section 1475 of the Code of Civil Procedure, similar to our section 6881, supra, and from which ours was patterned, "has to do exclusively with homesteads declared during the lifetime of the spouses. The law has not seen fit to make the same provision as to probate homesteads." In re Huelsman's Estate, 127 Cal. 275, 59 P. 776; 1 Ross' Probate Law and Practice 510; Bancroft's Probate Práctice 1270, and cases cited. In other words, when the survivor's title to homestead property must be fixed and defined by the operative force of a probate court order or decree and not through the act of the parties themselves, the statute requiring the presentation of a claim secured by a lien or incumbrance may not be invoked. The first sentence of section 6881, supra, speaks only of a homestead properly selected by the parties "prior to the death of the decedent" and returned in the inventory "at not exceeding $2,500." Nothing remains to be done by the court in such case except to assign it "to the persons in whom the title is vested." The section then continues with the requirement as to presentation of claims secured by liens or incumbrances which is relied upon here. It is obvious that, so far as its literal phraseology is concerned, this requirement is readily applicable to a homestead property as defined in the first sentence of the section.

What is the situation when the parties have, as in the case at bar, failed in their lifetime to select property worth not exceeding $2,500, but have made their home on property worth, for example, as here, double that sum? Under such circumstances, the

provisions of section 6882 of the Comp. St. of Wyo. 1920 (now section 88-3002, Wyo. Rev. St. 1931) necessarily have to be invoked which require the action of appraisers to admeasure the homestead, defining its metes and bounds—in short, selecting it— and this action reported to the court for its approval or, if the premises cannot be divided without material injury, then the court may make an order of sale thereof, and the proceeds, only, of the property are divided. It would seem that the procedure contemplated in section 6882 is akin to the establishment of the probate homestead referred to in the California cases and concerning which, as we have seen, the law relative to presentation of claims secured by liens or incumbrances is not applicable. There is no provision made in the section last mentioned for their presentation as there is in section 6881. It is apparent that section 6882 deals only with a *right* to have a fixed statutory amount of property or money selected by the court for the party entitled thereto, and not, as section 6881, with a specific piece of property definitely selected by the parties themselves. The logical conclusion is that, even under the view taken by the courts of California when that is applied to the homestead right involved here, it was unnecessary to present the claim for indebtedness secured by the mortgage aforesaid to the executrix of the Delfelder estate.

The foregoing conclusion, it seems to me, fairly harmonizes with what this court has said in Jones v. Losekamp, 19 Wyo. 83, 114, P. 673, 676, when the homestead exemption was only $1500, where the following language was used:

"We do not overlook * * * the further provision of our probate law, that if the homestead is returned in the inventory appraised at more than $1500, the ap-

praisers must determine whether the *premises*, (not the homestead), can be divided without material injury, and if they find they can be thus divided they must admeasure and set apart to the parties entitled thereto such portion of the premises, including the dwelling house, as will amount in value to $1500, giving the metes, bounds and full description of the portion set apart as a homestead. * * * It is apparent, therefore, that where these statutes speak of the homestead as being of greater value than $1500, they mean the premises occupied or claimed as such, and not the homestead exempt from forced sale, or to which the restriction upon disposition applies."

Concerning the case of Bank of Woodland v. Stephens, 144 Cal. 659, 79 P. 379, where expressions in the nature of dicta may be found which hardly can be reconciled with what is said in Jones v. Losekamp, supra, it may be noted no question arose there concerning the exercise of a power of sale either in a trust deed or a mortgage, the foreclosure of the mortgage was by court action, and the mortgagee raised no question as to the ruling of the trial court in declining to allow a foreclosure on the property finally set off under the homestead right. The only question decided, which might be in any way pertinent to the matter at bar, was that a mortgage which was foreclosed by action need not be presented under section 1475 of the California Code of Civil Procedure, so far as it concerned property in excess of the statutory value of the homestead right. Nothing was said either, nor was it involved, touching a situation where the property could not be divided without material injury, and a sale became necessary in consequence.

Indeed, it is not easy to perceive how section 6882, supra, would operate if the claim presentation requirement and the clauses following it in section 6881 be deemed applicable to the homestead right with which section 6882 deals. Suppose the creditor in

this case had undertaken to comply with section 6881. In such event, it must have presented to the executrix the claim secured by the mortgage "on the homestead." But the mortgage covered the claimed and occupied "premises" which, as said in Jones v. Losekamp, were not the homestead of the parties executing it. The only claim which could have been presented was the creditor's claim of indebtedness secured by mortgage upon lots 17 and 18, aforesaid, together with a large amount of other property. The amount of the claim secured by mortgage "on the homestead" could not be stated as other property also was integrally covered by the lien. The only way in which the amount due under the mortgage on these premises could be ascertained would be by first foreclosing the mortgage on and sale of all the property in excess of the statutory exemption value. Where is the authority to be found in the law for foreclosing a mortgage in piece-meal fashion? Where the property could not be divided without injury, how could the creditor determine the excess property on which the foreclosure might proceed?

Section 6882 provides for a sale of the premises by the court if they cannot be divided "without material injury." Nevertheless, logically, under the doctrine of Jones v. Losekamp, supra, the California and other courts, and under the authority given by the statutes of this state governing mortgage foreclosures, the creditor is the party vested with the right to sell that part of the premises over and above the value of $2,500. The query at once suggests itself, who would have the right to make the sale? Assuming, however, that a sale were made under the section 6882, the proceeds of the premises are required to be distributed to "the parties entitled thereto"; yet section 6881 declares that where the funds of the estate are insufficient to

meet the mortgage indebtedness on a homestead, a proportionate amount shall be paid on it from the general assets of the estate and the secured claim "shall only be enforced against the homestead for any deficiency remaining after such payment." How could this mandate of the statute be carried out? These are only a few of the difficulties to be met with if section 6881 is regarded as applicable to the situation with which section 6882 undertakes to deal. Many others could be suggested. It seems apparent that the two sections should be regarded as legislating concerning separate matters.

It is noteworthy that the courts of California have definitely excepted deeds of trust containing powers of sale and including homestead property from the operation of section 1475, supra, (2 Bancroft's Probate Practice 1268; Athern v. Ryan, 154 Cal. 554, 98 P. 390; Weber v. McCleverty, 149 Cal. 316, 86 P. 706) and do not require the claim for indebtedness which they secure to be presented to the executor or administrator. And this is so, although concerning the trust deed in that state, the\ Supreme Court of California has said, in Sacramento Bank v. Alcorn, 121 Cal. 379, 53 P. 813, 814:

"Indeed, under the decisions it is practically, though not in legal effect, little more than a mortgage with power to convey. The legal title passes but it conveys no right of possession, and the trustor may remain in possession, and, until the execution of the trust, may maintain an action to recover possession even when the trust deed is silent upon the subject of possession. Tyler v. Granger, 48 Cal. 259. Notwithstanding the deed of trust, the trustor may file his declaration of homestead, and hold the premises as such against his creditors who are not secured by the trust deed or some valid lien. King v. Cotz, 70 Cal. 236, 11 Pac. 656. Notwithstanding the trust, the trustor may devise or transfer the property subject

to the trust. Civ. Code § 864. And the devisee or grantee acquires a legal estate against all persons except the trustees and persons lawfully claiming under them. Id. § 865. And, when the purpose of the trust ceases, the estate of the trustees also ceases. Id. § 871. Under these decisions and statutes, it would seem that, while we must say that the title passes, none of the incidents of ownership attach, except that the trustees are deemed to have such estate as will enable them to convey. So limited such a trust has all the characteristics of a power in trust."

So far as the distinction made, as grounded upon the transfer of the legal title, is concerned, every lawyer is familiar with the doctrine that an absolute deed, when given to secure a debt, is regarded generally as a mortgage and so amounts to a mere lien in this state. Again, in More v. Calkins, 95 Cal. 435, 30 P. 583, 29 A. S. R. 128, discussing the effect of a trust deed containing a power of sale, the court also said:

"The instrument which the plaintiff seeks to have set aside is a trust deed. It conveyed to defendant Calkins the legal title to the property described, upon the trusts which it declares, and conferred upon him the power in execution thereof to sell the property thus conveyed, and transmit the legal title to his grantee. Koch v. Briggs, 14 Cal. 257 (73 Am. Dec. 651); Bateman v. Burr, 57 Cal. 480; Thompson v. McKay, 41 Cal. 221. It is not material that in this case the conveyance was made directly to Calkins, who was a creditor, and not to a third party. Whether the conveyance is to be treated as a mortgage or as a deed of trust must depend upon its essential character, as shown by its terms, and not whether the grantee is a creditor whose debt is to be paid out of the proceeds to arise from the execution of. the trust which is declared. In Thompson v. McKay, 41 Cal. 221, the deed was upon a trust to sell or lease the premises conveyed, and, after making certain deductions, to apply the proceeds to the payment of a promissory note executed by the grantor in favor of the grantee, and the court said, in declaring the legal

effect of this deed: 'That the deed from Gowen to Hill conveyed the fee, and that Hill had the power, in execution of the trust, to transmit the legal title to a purchaser is too plain for debate.' The death of the grantor did not operate as a revocation of the power of sale contained in the deed under consideration, or in any manner limit the effect of the deed, and, this being so, the failure to present to the administrator of deceased the claims secured by it furnishes no ground for a court of equity to cancel the deed. Whitmore v. Savings Union, 50 Cal. 146. As the deed ·made by plaintiff's intestate requires no judicial foreclosure, and the powers and trusts therein declared are in full force, it follows that sections 1493 and 1502 of the Code of Civil Procedure, prescribing the time within which claims must be presented against the estate of a deceased person, and section 1500 of the same Code, allowing an action for foreclosure of a mortgage, without presentation of such claim, only 'when all recourse against any other property of the estate is expressly waived in the complaint,' have no application to the case before us, and the right of the defendant to execute the powers conferred by the deed, and apply the proceeds arising therefrom to the payment of the debts and charges named in the deed, is not dependent upon a compliance with these sections."

Sections 1493, 1502, and 1500 of the California Code of Civil Procedure referred to in the excerpt last above given are substantially identical with sections 6889, 6897, and 6895, Wyo. Comp. St. 1920. The doctrine of the last case seems not to have been departed from by later decisions, for in the case of In re Thurnell's Estate, —— Cal. App.——, 19 P. (2d) 14, 18, this language is found:

"The declaration of trust having granted to the bank the power of sale of the property upon default in the payment of the notes, the ·death of one of the grantors did not operate as a revocation of that power of sale nor in any manner limit the effect of the instrument. There was no ˙necessity to present any

claim against the estate as a prerequisite to the exercise of said power of sale. The provisions of section 1493 of the Code of Civil Procedure, requiring the filing of claims against the estate of a deceased person, and of section 1500 of the Code of Civil Procedure, prescribing the conditions under which actions may be maintained to foreclose mortgages or liens upon the property of estates, have no application to the right of a trustee to sell property under a power of sale contained in a trust deed. More v. Calkins, supra."

Under these authorities, it would seem reasonably to follow that, as no judicial foreclosure is required under a mortgage with a power of sale therein, i. e., no action in court need be brought to secure its execution, no presentment of the claim for indebtedness secured thereby, under section 6881, was necessary.

The section last mentioned provides for the presentation of claims secured by liens or incumbrances upon the homestead "as other claims against the estate." No penalty for failure to present is prescribed in this section and we must look to sections 6889 and 6895 of Wyo. Comp. St. 1920, the statutes dealing with the general presentation of claims against estates, to determine what this is and what method of enforcement of the mortgage is prohibited if the claim is not presented. The first of these sections last referred to declares that "any claim not so presented is barred forever" and the other prescribes that no holder of any claim against an estate shall maintain any action thereon unless the claim is first presented to the executor or administrator," and then states an exception which demonstrates that necessarily the two sections must be construed together. Section 6897, Wyo. Comp. St. 1920, relating to the presentation of claims involved in actions pending at the time of the death of the decedent, also provided

as the penalty for its infraction that "no recovery shall be had in the action." In other words, the only consequence affixed by law for failure to present claims to the executor or administrator is that the remedy by action shall not be maintained against him or the estate. An examination of the California cases will disclose that in interpreting sections 1475 and 1476 of the Code of Civil Procedure of that state (similar to §§ 6881 and 6882 supra) the only remedy referred to as barred is that by action.

The method of foreclosure of a mortgage through the exercise of a power of sale "is not in any sense a suit or action." 41 C. J. 922 and cases cited. Even if section 6889, supra, be regarded as an absolute statute of limitations, this court has already intimated, in State ex rel. Avenius v. Tidball, 35 Wyo. 496, 252 P. 499, 504:

"That it is generally held that a statute of limitations governing acts or suits to foreclose mortgages has no application to proceedings of foreclosure under a power of sale in a mortgage or trust deed. 41 C. J. 944. The trust deed and mortgage in the case at bar appears to provide for the power of sale by the trustee, and it would seem that the rights of bondholders in this respect could hardly be curtailed by the court in a proceeding where they are compelled by it to file their claim with it or with the receiver."

In this connection, also, it may be recalled that the Supreme Court of California, in Bull v. Coe, 77 Cal. 54, 18 P. 808, 812, 11 A. S. R. 235, has said:

"It cannot be contended that the failure to present a claim as to the debt extinguished it, and that the lien, being a mere incident to the debt, expired with .it; because, although a claim which is not presented becomes 'barred,' it is not 'extinguished.' Whitmore v. Savings Union, 50 Cal. 149."

It is noteworthy, too, that the Legislature of California has, itself, guarded against the operation of section 1475, supra, as that section had previously been construed by the courts, first, through an amendment enacted in 1917, reading:

"Provided, that it shall be the duty of any executor or administrator, within sixty days after the first publication of notice to creditors, to notify in writing the record holder of any such lien or encumbrance upon real property subject to a declaration of homestead of the death of the testator or intestate, and unless so notified, the rights of the holder of such lien or encumbrance shall not be affected by his failure to present such claim as hereinabove required. (Amendment approved May 21, 1917; Stats. 1917, p. 783.)"

And, second, in 1931, by repealing the entire section and reenacting in its stead the following:

"If there are subsisting liens or encumbrances on the homestead, and the funds of the estate are adequate to pay all claims against the estate, the claims secured by such liens and encumbrances, whether filed or presented or not, if known or made known to the executor or administrator, must be paid out of such funds. If the funds of the estate are not sufficient for that purpose, the claims so secured shall be paid proportionately with other claims allowed, and the liens or encumbrances on the homestead shall only be enforced against the homestead for any deficiency remaining after such payment."

Statutes & Amendments to the Codes of California 1931, ch. 281, § 735. The Legislature of the State of Arizona has pursued somewhat the same course by adopting substantially the 1917 amendment mentioned above. See Arizona Civil Code 1913, § 873, as amended by Session Laws 1921, p. 435.

As heretofore related, plaintiff in error, in executing the mortgage upon the property here in contro-

versy, voluntarily affixed her signature to the statement therein that she waived and released "any and all rights, benefits, privileges, advantages, and exemptions, under and by virtue of *any* and *all* statutes of the State of Wyoming providing for the exemption of homesteads from sale on execution or *otherwise.*" (italics mine). It would certainly seem that thereby she, in substance, contracted that she unconditionally waived the benefit of any statute of this state which would prevent the sale of the property mortgaged to realize the indebtedness secured because of its asserted homestead character, in consequence of failure to present the same to the personal representative of either of the parties. The language is certainly broad and comprehensive enough to be so understood. It is germane to the purpose for which the parties were contracting, i. e., to secure the repayment of the money loaned. Sections 6881 and 6882, supra, were in existence at the time the mortgage was signed and the money loaned, and the parties can fairly be regarded as making their agreement with reference thereto.

In 29 C. J. 883, it is said:

"The power of alienation is an incident of the ownership of the property independent of the homestead law, and the directions and prohibitions of the constitutional or statutory homestead provisions as to the alienation are mere restrictions upon this antecedent power. Hence, where there is neither constitutional nor statutory prohibition as incident to the right of ownership, the owner of the homestead may sell or encumber it either in whole or in part; and the sale or transfer, when evidenced by a proper conveyance, will be as valid as if the property had not been set apart as a homestead."

There are no special restrictions applicable only to the rights defined by section 6881 and 6882, supra. Section 4625, Wyo. Comp. St. 1920, provides: "When

the grantor or grantors in any such deed or mortgage for the conveyance of any real estate desires to release or waive his, her or their homestead rights therein, they or either of them may release or waive the same by" doing as was done in the mortgage involved here. The rights arising under said sections 6881 and 6882 unquestionably must be grounded upon the fact that plaintiff in error and her husband were, at the time of execution of the mortgage, presently living upon the land affected. Even if these rights be regarded as, in part, inchoate at the time the mortgage was executed by plaintiff in error and her husband, the general rule should control that when a mortgagor is without interest, a subsequently acquired title will inure to the benefit of the mortgagee by virtue of the conveyance contained in the mortgage. 1 Jones Mortg. § 679. Especially is this so when the mortgage, as here, contains the usual covenants of warranty with their attendant consequences. 41 C. J. 478, § 395.

In the recent case of United States Building & Loan Ass'n v. Stevens, —— Mont. ——, 17 P. (2d) 62, 63, the statute provided:

"The purchaser of lands at mortgage foreclosure or execution sales is not entitled to the possession thereof as against the execution debtor during the period of redemption allowed by law while said execution debtor personally occupies the land as a home for himself and his family."

A mortgage which contained the following stipulation: "In case of foreclosure the mortgagor hereby expressly waives any claim of homestead and all right of possession of the mortgaged premises during the period allowed by law for redemption," was foreclosed and a decree was entered having among its provisions that the purchaser at the foreclosure sale should

be entitled to possession of the premises during the statutory period. The trial court declined on motion to eliminate this provision. On appeal, the sole question presented was to the validity of the specific waiver of the right to possession, as recited above. It was contended on behalf of appellants that, "The section permitting occupancy * * * is undoubtedly in the nature of a homestead. It gives him * * * time within which to adapt himself to his new circumstances," and "a homestead right cannot be waived by contract in advance of occasion for asserting such right, such contract of waiver being against public policy. Holding the waiver valid and affirming the decree below, the reviewing court said:

'We point out that we recognize the fact that other courts have held advance *general* waivers in executory contracts void as contravening public policy. See Bunker v. Coons, 21 Utah, 164, 60 P. 549, 81 Am. St. Rep. 680; Weaver v. Lynch, 79 Colo. 537, 246 P. 789, 47 A. L. R. 299, and note appended to the report of this last case; and 11 R. C. L. p. 543.

"A mortgage of the exempt property, being specific, whether it be a homestead or personal property, has the effect, to say the least, of a waiver of the exemption. This may be uniformly done if the statutory restrictions are complied with. See sections 6949 and 6950, Rev. Codes 1921; 11 R. C. L. p. 544; 13 R. C. L. p. 621; and Bunker v. Coons, supra.

"We think it is reasonably deducible from the decisions in other states that wherever a claimant, with full knowledge of his right to withhold any specific piece of property or right from forced sale, and of the consequences of a relinquishment of that right, executes a contract based upon consideration, which describes the specific property or right affected, and agrees to dispose of such property or right, whether it be by relinquishment or conveyance, he will be bound by his contract. See Moran v. Clark, 30 W. Va. 358, 4 S. E. 303, 8 Am. St. Rep. 66, and cases cited and discussed; and 25 C. J. p. 110. * * *

"The mortgage containing the express waiver was signed by both husband and wife. The specific right was identified, and we must assume that the mortgagors knew of their right to possession and intended to waive it. The written contract imports consideration. On any theory the parties had the right to enter into the contract before us. Being such a contract as the parties might rightfully make, it is our duty to enforce it, even though it may be that they now think they made a bad bargain. Viers v. Webb, 76 Mont. 38, 245 P. 257. A contract is not invalid because it turns out to be unreasonable, dangerous or burdensome. Lawson v. Cobban, 38 Mont. 138, 99 P. 128."

So in the case at bar, the mortgage containing an express waiver was signed by both plaintiff in error and her husband. The specific right was identified by positive reference to "any and all" laws of this state dealing with the exemption of homesteads. As already suggested, it is but fair to assume that the mortgagors knew of whatever rights they might have under sections 6881 and 6882, supra, and intended to waive them.

Finally, it may be assumed that mortgages have been foreclosed upon homesteads through the exercise of a power of sale in this state without the presentation of any claim, under section 6881, supra, it not being generally supposed, hitherto, that such presentation was required as a prerequisite to the execution of the power of sale created by the mortgage contract. In such event, titles to real estate will be unsettled by holding that a presentation of the claim is necessary before the execution of the power can be had, even confining the holding to the case where there are assets in the estate which might be applicable to the debt. I do not think the statute requires such a conclusion generally, and certainly not when

applied to the facts at bar, and fear that more harm than good will flow from it.

KIMBALL, Chief Justice.

I concur in the result, and think nothing need be added to the discussion by Justice Blume of the points which he has numbered one to four.

As to the legal effect of the failure of the mortgagee to present a claim under section 88-3001, R. S. 1931 (§ 6881, C. S. 1920), the views of the members of the court are not in accord. Justice Blume assumes for the purposes of the case that the claim secured by the mortgage should have been presented in obedience to the cited statute, but, as I understand, holds that in the circumstances the sale of the homestead premises on foreclosure of the mortgage was not void, but at most merely voidable, and that in the present action the failure to present the claim was no defense in the absence of a showing that presentation would have benefited the homestead claimant  While I do not dissent from this view, it may seem contrary to some expressions in the California decisions·in which it is said that the failure to present a claim secured by a mortgage on a homestead releases the homestead property from the effect of the mortgage. Rosenberg v. Ford, 85 Calif. 610, 614, 24 Pac. 779; Votypka v. Valentine, 41 Calif. App. 74, 182 Pac. 76. If that be so, it is not easy to see how a sale of the released property on foreclosure of the mortgage could be anything less than void.

I think a less doubtful ground for our decision on this point is suggested in the opinion of Justice Riner who thinks the statute is confined in its operation to claims secured by liens or incumbrances on homesteads not exceeding $2500 in value, as described in § 88-3001, and has no application to a claim secured

by a mortgage on homestead premises of a greater value, which are controlled by the provisions of § 88-3002 (§ 6882, R. S. 1920).

I think § 88-3001 controls cases where there is a lien or encumbrance on homestead property which, subject to the lien or encumbrance, vests in, and should be set off to, the surviving homestead claimant. This homestead, under § 88-3001, may be all the property occupied as a home, if of a value not exceeding $2500, or, under § 88-3002, may be property of that value, admeasured and set apart by the appraisers. It is this homestead property which the statute intends shall be preserved if possible. This seems to me to be the broadest construction permitted by the language of the statute, and not contrary to any noticed case decided under a similar statute.

When, as in this case, the mortgaged property occupied as a home is of value greater than $2500, and of such character that it cannot be divided without material injury, there is no property covered by the mortgage that can be set off as a homestead. If the statute be stretched to cover cases of this kind, parties affected by it would encounter the many difficulties suggested by Justice Riner.

Two other questions raised by plaintiff have been discussed at some length. It is contended first, that the statute (§ 88-3001) does not affect the right of a mortgagee foreclosing under a power of sale contained in the mortgage; and, second, that defendant, as mortgagor, by certain language contained in the mortgage, waived her right to have the claim presented. Justice Blume assumes for the purpose of the case that neither contention is good, and intimates an opinion in accordance with the assumption. Justice Riner expresses a different opinion. It is not necessary to decide the questions so raised, but in the cir-

cumstances I feel that I should say that as now advised I am not willing to base our decision on either of these suggested grounds.

*On Petition For Rehearing.*

BLUME, Justice.

A petition for a rehearing has been filed herein. Counsel say that "the court has failed to consider some of the statutes and authorities cited by us in our original brief," and again, "some of our contentions in support of which we cited certain statutory provisions and cases were not given any consideration whatever by this court." That is stating the case rather strongly in view of the fact that we indicated in one of our former opinions the extreme and painstaking care that we had taken in the case, and which to some extent at least may be gathered from the former opinions handed down by this court. As we have a number of times heretofore stated, it does not follow, simply because we do not mention certain citations of counsel, that we have not given them the consideration which they deserve, and we have frequently been compelled in cases in which there were numerous assignments of error to leave those unmentioned which were not deemed of importance, so as to permit us to discuss freely the main points in the case.

Counsel contend that considering the undersheriff, who gave the sheriff's deed in this case, as a deputy, his deed, nevertheless, is void, because he did not execute it in the name of his principal, but in his own name. They complain because we did not specifically decide that point. We considered that contention a minor point in the case. Counsel disagree with us,

and in fact maintain that "of course" a deputy must execute documents made by him in the name of his principal. In deference to the opinions of counsel, which we value highly, we shall discuss the point in detail.

The only cases cited by counsel are Halter v. Leonard, 223 Mo. 286, 122 S. W. 706, and Wilson v. Russell, 4 Dak. 376. These cases are not in point, though they contain expressions favorable to counsel's contention. In both of these cases it was, so far as pertinent here, substantially held that a deed or certificate issued by a deputy may be issued by him in the name of the principal. We have no occasion here to disagree with this view, which, we might say, has generally been upheld (e. g., in 46 C. J. 1063), although it has not gone altogether unchallenged, for it has been held by four different courts that a deputy must act in his own name, or that this method is, at least, more proper than for him to act in the name of his principal. MacKenzie v. Jackson, 82 Ga. 80; State v. Doe, 6 Wash. 587, 34 Pac. 154; Beaumont v. Yeatman, 8 Humph. 542; Eastman v. Curtis, 4 Vt. 616. There are, however, some early cases which sustain counsel's contention. These may be found in note to 26 Am. Dec. 415, and 9 Am. & Engl. Ency. of Law (2d) 381. Some of them were decided under a statute which specifically provided that a deputy should execute documents in the name of his principal. These cases would, of course, not be in point, since we have no such statute. And it may be doubtful that, except in the face of such statute, many courts today, if any, would uphold counsel's contention in a case where, as in our state, a deputy is provided for by statute, and where he has specifically been given a certain power in question. In Beuley v. Curtis, 92 Ky. 505, a certificate to a deed had been executed by a deputy in

his own name. The court said that it would have been better if he had acted in the name of his principal. But the certificate was upheld, the court saying that to do otherwise would be a "sacrifice of right and justice to mere form." In Edson Keith Co. v. Bedwell, 52 Colo. 510, 122, Pac. 392, a jurat was executed by a deputy in his own name, and the court in upholding it said that "it would be a sacrifice of substance to form to hold it void for the reason simply that the party attesting did so in his own name as deputy instead of adding the name of his principal thereto by him as such deputy." The question before us has frequently arisen in cases where an acknowledgment was taken before a deputy. These cases, of course, present the same principle now under discussion. And while it has been held by many courts that it is proper to execute the certificate in the name of the principal, it has also been held in numerous cases that the deputy may make the certificate in his own name. 1 C. J. 797. The question was discussed at length in the case of Wilkerson v. Dennison, 113 Tenn. 237, 80 S. W. 765, 3 Ann. Cas. 297, 106 A. S. R. 821, and the court held that the certificate may be made in either form. The same rule was laid down in the case of Halbouer v. Cuenin, 45 Col. 507, 101 Pac. 763, in which it is said that the great weight of authority is in support of that view. The cases cited, and others, fully, we think, sustain the holding.

In the case of Craig v. Bradford, 3 Wheaton (1818) it was held that a survey, made by a deputy, was, in point of law, to be considered as made by the principal, and that his signature to the plat and certificate was a sufficient authentication of the survey, to entitle the person claiming under it to a grant. In Westbrook v. Miller, 56 Mich. 148, it was held that a deputy Auditor General could execute a tax deed in

his own name. In Calendar v. Olcott, 1 Mich. 344, and Wheeler v. Wilkins, 19 Mich. 78, a return made by a deputy sheriff in his own name was held to be valid. In Hogdon v. Davis, 6 Dakota 21, it was said that "the sale at foreclosure by the deputy sheriff, while, perhaps, irregular in not using the name of his principal, was valid," thus taking away whatever force there might otherwise have been in some of the things said in Wilson v. Russell, supra. In Burke v. Laock, 41 Minn. 250, it is said:

"The law authorizes a deputy sheriff, as such, to make the sale; and consequently, when he does so, it is proper for him to execute the certificate in his own name as deputy sheriff. His certificate stands on the same footing, and has the same force and effect, as that of the principal sheriff."

The case was followed in Clark v. Mitchell, 81 Minn. 438.

In Story on Agency (9th Ed.) Sec. 149, note 4, it is said:

"There is a distinction between doing an act by an agent, and doing an act by a deputy, whom the law deems such. An agent can only bind his principal, when he does the act in the name of his principal. But a deputy may do the act, and sign his own name; and it binds his principal; for the deputy in law has the whole power of his principal."

The rule is stated and approved in Calendar v. Olcott, supra. In Throop on Public Ofifcers, sec. 585, it is said:

"Ordinarily a deputy must act in the name of his principal, and his acts in his own name are invalid. But where a statute empowers a deputy, *eo nomine*, to perform particular acts, he may lawfully act in his own name."

In Mechem on Public Officers, sec. 584, it is said that the conflict in the cases is more apparent than

real, and that in those states in which a deputy is recognized as an independent public officer, the deputy may act in his own name, and the author further says, in sec. 570:

"Where a public officer is authorized to appoint a deputy, the authority of that deputy unless otherwise limited, is commensurate with that of the officer himself, and in the absence of any showing to the contrary, it will be so presumed. Such a deputy is himself a public officer, known and recognized as such by law. Any act, therefore, which the officer himself might do, his general deputy may do also."

And the author cites a number of cases holding that the deputy might act in his own name.

In the case at bar, the statute *eo nomine* authorized the deputy sheriff to conduct a sale of mortgaged property under a power of sale. Section 4639, Wyo. C. S. 1920, in force at the time of the sale herein in question, provided that, to perpetuate the evidence of the sale, an affidavit might be made of the fact of the sale "by the person who acted as auctioneer at the sale," which, in case a deputy holds the sale, can refer to no one except the deputy individually. It is held that authority to execute a conveyance to the purchaser at a foreclosure sale is necessarily incident to the power of sale, and that the deed, accordingly, may be made by the mortgagee, his assignee, or by the sheriff or other officer who made the sale. 41 C. J. 992. Section 4636, Wyo. C. S. 1920, provided that "if the lands sold be not redeemed within the time limited therefor, the officer making the sale shall forthwith execute and deliver to such purchaser a deed" etc. If the statute had contemplated that only the sheriff should make the deed, it could easily have so stated. It does not say that. We think that even counsel for plaintiff will concede that a deputy

who makes the sale may, so long as he is such deputy, execute the deed. Counsel merely contend that it must be in the name of the principal. The deputy is *eo nomine* given the power to execute the deed, pursuant to a sale made by him. If, then, the rule laid down by Throop, supra, is correct, and we think it is, then a deed executed in his individual name cannot be held to be invalid. Counsel seem to think that we should hold otherwise, in the light of section 4637, W. C. S. 1920, which empowers a successor in office to execute the deed. That section was passed in 1915, and was enacted merely to give some one power to execute a deed, when an officer, who had made a sale, had gone out of office. We are unable to see how that section can have any bearing on the point as to whether a deputy who makes a sale and who is still in office, should execute the deed made pursuant thereto in his own name or in that of the principal.

2. Defendant contended in the trial below, after plaintiff had rested, and she contends now, that the action should have been brought, if brought at all, against her in her capacity as executrix. She was not made a party as such. We treated the point as one involving a defect of parties, holding that it should have been raised by demurrer or answer, and not having been so raised, it was waived. It appears now that defendant's contention was broader than we seemingly took it to be. Defendant claims, not that she should have been made one of the defendants in her capacity as executrix, but that she, in that capacity, should have been made the sole defendant; in other words, that the action was brought altogether against the wrong party, and that, accordingly, no valid judgment could be rendered herein. Reading the record, and the original brief of counsel for the defendant in the light of the petition for rehearing and

the brief filed in connection therewith, we can see that the contention was broader than we apparently took it to be. We may have taken the view which we did perhaps partially at least by reason of the fact that in the brief of counsel for the plaintiff, too, the position was taken that the contention merely involved one of defect of parties, which was waived under our statute. We found no answer to this on the part of the defendant, unless that was made on oral argument. In any event, since counsel for defendant seem to consider the point one of importance, we shall discuss it from its various angles, and it may be gathered from what we shall say as to whether, or to what extent, our statements heretofore made were wrong.

FIRST. Counsel say that from the time that Mrs. Delfelder was appointed executrix of the estate, she had possession of the property in question, and they assert that she was the only proper party defendant, apparently on the theory that an action in ejectment, i. e., for the recovery of real property, must be brought against the party in possession, and cannot be brought against any one else. Counsel for the plaintiff answer that the defendant herein denied the plaintiff's title (which is true), and that she cannot, accordingly, deny that she, individually, had possession, and they cite us to section 89-3904, Rev. St. 1931, which provides in part:

"It shall be sufficient in such action (for the recovery of real property) if defendant in his answer deny generally the title alleged in the petition, or that he withholds the possession; but if he deny the title of the plaintiff, possession by the defendant shall be taken as admitted."

The rule mentioned in the statute is discussed in 19 C. J. 1141, 1142, and Tyler on Ejectment, page 457. It is in force in many states in which the de-

fendant may raise the general issue, and in code states. It exists in England. It is not, however, in force everywhere. See in addition to the cases cited in 19 C. J. supra, Rucker v. Steelman, 73 Ind. 396; Applegate v. Dee, 2 Ind. 169; Volz v. Newbert, 17 Ind. 187; Perkins v. Rait, 43 Me. 280; Blake v. Dennett, 49. Me. 102; Treat v. Strickland, 23 Me. 234; Taylor v. Danley, 83 Kans. 646, 112 Pac. 595. The fundamental reason for the rule seems to be that no one should be able to question plaintiff's title unless he is interested therein; that the question of possession and that of title should be separated in an action in ejectment; and that a person who wants to question such title should, in fairness, not at the same time be able to question the fact of possession. The rule shows clearly that the question of possession is by no means of that paramount importance which counsel for defendant apparently attributes to it. They do not believe that this rule prevented defendant from showing the true facts, namely, that she was in possession as executrix. But by that she evidently intended to deny that she was in possession as an individual, the very fact which the statute intended to prohibit. A person cannot very well, consistently, admit and deny at the same time. Under the statute she admitted possession. She was, accordingly, barred from denying it. The rule is too well established to permit us to say that it is not applicable in this case.

SECOND. Let us take a step further, and investigate whether Mrs. Delfelder was in possession of the premises in controversy individually or as executrix. Counsel cite us to our statutes, which limit the right of possession of a widow to the time that letters are granted, and which direct an executor to take possession of the property of the deceased. Section 88-2309, -2501,-2901. But it is one thing for a statute to make

a direction, and another for it to be carried out. Counsel further cite us to the cases of Flinn, et al v. Gouly, (Cal.) 75 Pac. 542, and Brazil et al v. Silva, 181 Cal. 48, 185 Pac. 174, 178. The first of these cases was an action to foreclose a lien of a street assessment, brought against Ellen Gouly individually and as administratrix. There was no averment as to the fact that defendant acted as administratrix, and a judgment against her, in that capacity, was accordingly reversed. We do not know why the case has been cited. The Brazil case was an action against the sole distributee under a will to recover property on the ground of a constructive trust in plaintiffs' favor. It was held that the action did not accrue till the distribution was made, and that up to that time defendant held possession in her capacity as administratrix. The case cannot be considered in point. It does not appear whether the administratrix had actual or only constructive possession. Either kind of possession evidently sufficed for the determination of the question as to when the statute of limitation would commence to run, while the question here is as to who had actual, physical possession. On that point the record shows that Mrs. Delfelder, individually, was in possession when Mr. Delfelder died. She also testified to the same thing. And after stating that she had returned the property in controversy in her inventory as executrix she testified as follows:

"Q. And since that time, have you been *remaining* in occupancy of that property there, since you made the return of the inventory?

A. I have.

Q. Have you any other home than that you are now occupying?

A. No.

Q. Then so far as you are concerned, you have

been living in that from April, 1913, up to the present time?

A. I have.

Q. And you are living in it now?

A. Yes, sir."

If a third person had been executor and had attempted to use a house belonging to the estate as his home, he probably would have been promptly asked, why he should not be compelled to pay for the use. In this case, it does not appear that the defendant has in any way charged herself, as executrix, with rental, and the only impression that may be gathered from the foregoing testimony is that there was no change of possession whatever from 1913 up to the time of the trial. If there was a change, it could have been theoretical only. The physical possession remained the same. The most that could be said, it would seem, is that defendant held possession under herself as executrix, similarly, say, to a tenant at will, or on sufferance. And there seems to be no question that a tenant in actual possession is a proper party in an action of ejectment. 19 C. J. 1073, 1097-99.

THIRD. If, moreover, we assume that the executrix had possession, it is still necessary to inquire whether or not the defendant, on account of her claims, was, nevertheless, a proper party herein in her individual capacity. If she was, then it necessarily follows that the contention that the action should have been brought solely against the executrix, falls to the ground, and it then resolves itself at most into a question merely of defect of parties, as stated in the original opinion, assuming, of course, that the executrix was a proper party at all, and the defect, if any, was waived unless properly raised. Finnegan v. Carrahar, 47 N. Y. 493; Mataoka Coal Corporation v. Mining Corporation, infra. For some reason or

other, counsel confidently assume that if the executrix was in possession, their contention is correct. Some of the cases which were cited in the brief of plaintiff, and in our original opinion, hold the contrary. No cases were cited in the brief of defendant. None are cited now. However, the rule which counsel for defendant assume to be beyond cavil appears to have been the rule at common law. Adams on Ejectment, (4th Ed.) 283. Possibly the Bench and the Bar as a whole are of the opinion held by counsel for defendant, and it may not be inadvisable to investigate the question anew, and at some length.

At common law, it seems, the owner of the property, generally the landlord, was to a large extent at the mercy of the person or tenant, in possession, who alone was the proper party in an action of ejectment, and who was not compelled to notify the landlord of the pendency of the suit. To remedy that situation, the statute of 11 Geo. II, c. 19, was passed, authorizing the courts to permit the landlord to come in and defend. At first the term "landlord" was construed strictly. But in the case of Fairclaim v. Shamtitle, 3 Burr, 1290, 97 Eng. Rep. 837, Lord Mansfield decided that the benefit of the statute should be extended to every person whose title was connected with, and consistent with the possession of the occupier, and that it should not be necessary that they had previously exercised any act of ownership over the property. And the courts, thereafter, permitted an heir, who had never been in possession, to defend, where the father, under whom he claimed, had just died before. So a devisee in trust, not having been in possession, was permitted to defend, and a mortgagee was permitted to come in as defendant with the mortgagor. Adams, on Ejectment, supra, 283-289. See also Bower v. Cohen, 126 Ga. 35. The law as thus modi-

fied has been applied in some of the courts in this country. See a review in Tyler on Ejectment, 448-456. The author calls attention, among others, to Porter v. Robinson, 3 A. K. Marsh, 253, wherein it was held that the possession of a widow, remaining in the mansion house until her dower was allotted, was consistent with the possession of the heirs, and that in an ejectment brought against her, they had the right to defend.

The foregoing may well be borne in mind in considering, as we shall proceed to do, the modifications under the codes. These are not by any means uniform, some of them providing for the joinder of interested parties in connection with provisions which specifically deal with the action for the recovery of real property, or ejectment; others still hold to antiquated rules. Our statute dealing with that subject contains no separate, independent provision as to joinder of parties. But section 89-514, Rev. St. 1931, provides that "any person may be made a defendant who has or *claims* an interest in the controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of a question involved therein." We must determine the meaning and application of that section in the case at bar. In Garner v. Marshall, 9 Cal. 268, decided in 1858, the court said that a similar section of the California statute did not apply in an action in ejectment, and that it referred "to cases in equity where all parties, whose rights may be affected, are to be brought in as parties, in order that a complete decree may be rendered." That the court misunderstood the intent of the statute is obvious. For as said in Pomeroy, Code Remedies (5th Ed. 1929) section 1871, in speaking of joinder of defendants:

"The rules which the legislatures have put into a statutory form are confessedly the general doctrines of equity concerning defendants. They apply in terms to the civil action appropriate for the pursuit of all remedies; no exceptions are made or suggested. The design of the legislature is therefore plain, that these equitable doctrines and rules should be controlling in all cases, and should not be confined to actions which are equitable in their nature."

So when the same point again came before the California court in Valentine v. Mahony, 37 Cal. 389, (1869), the court recognized the obviously erroneous decision in the Garner case, but said that the rule had been in force so long that the legislature should make the correction, which it did three years later. Code Civ. Proc. 379, 380.

Pomeroy, on Code Remedies (5th Ed., 1929), the author speaking of the action to recover real property, says in section 195:

"If the object be to establish the title, the holder or claimant of the adverse title must be made the defendant, while in respect of the claim to possession the occupant must be made a defendant. These are the simple essentials of the action, and they clearly have nothing in them akin to "eject-ment.' The codes of some states contain express provisions in relation to parties defendant, and especially in relation to the union of landlord and tenant as co-defendants, but these are rather inserted from an excess of caution, and do not add anything to the force of the more general clauses."

And in section 196, the same author, after speaking of making all those in joint possession parties, further states, citing many cases:

"In addition to these he may join the landlord or person holding the fee, or any person claiming the ownership and right of possession, and must join

such person, if he desires to establish in that action his own ultimate ownership against the claimant."

In 19 C. J. 1099, citing many cases, it is said:

"Under Code and Practice acts, any person having an interest adverse to plaintiff, or claiming title or right of possession, may be made a defendant. Privity with the occupant is not essential. But while such person is a proper party, he is not a necessary party, unless he is in actual occupation."

In Newell on Ejectment, Sec. 41, it is said:

"The modern rule in ejectment requires that all persons who have or claim to have any interest, ownership, title or right of possession in or to the premises sought to be recovered, must be joined as defendants if it is sought to bind them upon questions of title."

In the case of St. John v. Pierce, 22 Barb. 362, the court said among other things:

"The action of ejectment was anomalous before the code, but I think the codifiers did not intend to have any such anomaly remain. They clearly intended to have one uniform system of practice and pleading and proceeding in all civil actions. * * * The codifiers intended to allow great latitude in regard to parties. They say, 'We have intended to leave suitors very much at liberty to choose whom to make defendants and whom to join as plaintiff. No person can be affected by a judgment but a party, or one who claims under him. The rule will make the plaintiff bring in all parties whom he wishes to affect.' "

In the case of Waldorph v. Bortle, 4 How. Pr. 358, an action to recover real property, the defendant died during the pendency of the action, and his heirs were brought in. It was objected that they

were not proper parties because it was not shown that they had succeeded to the possession, and it did not appear who was in possession. The court said:

"But I think the rule, as to making parties defendant in an action to recover possession of land, is now changed. Section 118 of the Code provides 'that any person may be made defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein." This is applicable to every civil action, including as well cases in which the remedy would formerly have been at law, as those in equity, such distinction being now abolished. (Code, § 69). The practice in all actions is now, therefore, the same as in our late court of chancery; and I see no reason why, in an action to recover possession of land, all persons claiming title to, or an interest in the property, may not now be made defendants as well as the persons in actual possession. I think it is, therefore, sufficiently shown that the heirs-at-law, claiming title, may properly be made defendants. They have succeeded to the legal rights of the original defendant. If there is a third person in the actual occupation of the premises, he ought also to be made a defendant."

In the case of Matoaka Coal Corporation v. Mining Corporation, 121 Va. 522, it appeared that recovery was sought from the Matoaka Coal Corporation, defendant in ejectment, which had obtained a lease to certain property, the terms of which were claimed to have been violated. The lessee had subleased the premises in controversy to one Barger, who had gone into the exclusive possession of the property. It was there contended that the action could not be maintained without making Barger, as the party actually occupying the premises, a party defendant. The court in referring to an

amendment of similar import as our section 89-514, supra, except dealing directly with the action to recover real property, said:

"The purpose of the amendment seems to have been to permit the plaintiff to join with the occupant as defendant any other persons claiming title to the land (Burk's Pl. & Pr. sec. 119, p. 200); and it may be conceded that the actual occupant is always a necessary party defendant to an action of ejectment in the sense that another defendant may by timely and proper procedure compel the plaintiff to bring the occupant before the court. The presence of the occupant, however, is not essential to the jurisdiction of the court, and if the claimant of the premises, who is sued does not appropriately raise the point, and defends the action upon the merits, he is bound by the judgment. The statute in question expressly makes the defendant in this case a proper party, and it was manifestly the real party in interest."

In South Park Commissioners v. Gavin, 139 Ill. 280, 287, 28 N. E. 826, under a similar statute, the court said:

"We are of the opinion that under the statute now in force, in an action of ejectment brought to recover land in actual occupancy of some person, it is entirely competent to join with the tenant in possession, not only those in privity with him, but all persons, whether in privity with him or not, who claim title or interest in the premises in controversy as co-defendants."

A case closely in point to that at bar is Porter v. Robinson, supra. There the widow was in possession, but there was a question whether or not the heirs were. The court held that they were properly made defendants; that "they had a right to be heard in that character (as heirs), as those who

claimed the ultimate right to the land, the possession of the widow being only temporary and consistent with theirs, whether they reside on the land or not." See also Marvin v. Dennison, 1 Blatchf. 159; McCain v. Jewell, 24 Pittsb. Leg. J. 185; Napa v. Howland, 87 Cal. 84, 25 Pac. 247.

Some of the cases go even farther than the foregoing. In Jeffrey v. Hursh, 45 Mich. 59, it was held that if defendant in possession relies on a tax title, and the validity of that title comes in question, the owner (not in possession) must be made a party. In Grace v. Means, 129 Ga. 638, 59 S. E. 811, it was held that if one in possession claims his right to possession under a purchase-contract from a third person, his vendor, the latter is a necessary party.

The foregoing authorities, if not conclusive, seem to be at least persuasive that there would be no justification for us to ignore section 89-514, supra, and hold that, while applicable to other actions, it has no application to an action for the recovery of real property. In terms it is applicable to all actions. Permission, under the statute, to make a person defendant does not depend upon the actual and lawful extent of the interest; a *claim* of an interest is sufficient, and that defendant claimed an interest herein cannot be doubtful, for she alleged that she was the sole heir and devisee under the will of the deceased, and that *at the death of her husband,* she became *entitled* to the homestead *premises.* Hence counsels' assertion in their brief on rehearing that we were wrong in saying in the original opinion that she claimed the right of possession can be true at most, if at all, only to the extent that she recognized that claim to be temporarily subservient to that of herself as executrix. And hardly that. For if her allegations were cor-

rect, possession by the executrix, if it existed, was purely at her pleasure, and could last only until she, individually, would set the law in motion to have the homestead set off to her. Furthermore, it is difficult to see how the controversy in the case could be completely determined without the presence, in the case, of the defendant herein. Counsel have, we fear, laid too much stress on the fact of possession. In many cases, the person in possession would not care a fig as to who is the owner of the premises, and he might frequently be perfectly willing to give up, technically at least, the possession to a plaintiff without a struggle, thus putting the person under or for whom he holds at a disadvantage. That shows the inadvisability, already recognized in the time of George II, to let the person in possession be the sole and only person who can defend in an action for the recovery of real property. A person in possession in good faith should, of course, be protected. He should, generally at least, be made a party defendant. But it might frequently be inadvisable to leave the defense to him alone. In some jurisdictions, it is made the duty of a tenant to notify the landlord, if an action in ejectment is brought, so as to enable the latter to protect himself. 19 C. J. 1097. We have no such statute, but if the plaintiff brings him in the first place, the same purpose is subserved. The fact of possession is in many, if not most of the cases, but of minor significance. The point of importance ordinarily is the title. That is true here. We need not discuss or determine the full significance of that fact, except to say that in many, and perhaps most, jurisdictions, the action is no longer a purely possessory action, but is, where both the title and the right of possession are brought in question, one in which the title in question also is

finally adjudicated. Marvin v. Dennison, 1 Blatchford 159; 20 Vt. 662; McCown v. Hannah, 3 Or. 302, 305; Cagger v. Lansing, 64 N. Y. 417, 428; Winkler v. Korzuszkiewicz, 118 Kans. 470, 235 Pac. 1054; Jenkins v. Raulston, 214 Ala. 443, 108 So. 47; In re Dutton's estate, 208 Pa. 350, 57 Atl. 719; 19 C. J. 1214, 1218; 34 C. J. 950; Freeman on Judgments, 5th ed., sec. 865; 9 Cal. Jurisp. 1018; see also Allen v. Houn, 30 Wyo. 186, 200, 201, 219 Pac. 573. The ultimate interest in the property, in any event, was the important question here. We need not go so far as to hold that the statute intended to have all interests of every kind determined, no matter how diverse; although the court in Ten Broeck v. Orchard, 74 N. C. 409, seems to go to that extent. We can here limit our decision to a case in which the interest is similar to that mentioned in Fairclaim v. Shamtitle, supra, and Porter v. Robinson, supra. The possession of the executrix, if she had possession, was consistent with the interest claimed by the defendant as an individual, for her claim finds a basis in the estate of which she was executrix. We think, accordingly, that we were not mistaken in stating in the original opinion, that the point here under discussion was at most one of defect of parties.

FOURTH. What has heretofore been said has been said largely upon the theory that Mrs. Delfelder as executrix is a different person from herself as an individual. The case of Eggers v. Krueger (C. C. A. Cal.) 236 Fed. 852, involves the interest of a person, who was at the same time sole heir and administrator of the estate, and the case is almost exactly in point on the question now under consideration. Krueger, sole heir, was appointed administrator of the estate of his mother. He was sued in the state courts in ejectment in his individual ca-

pacity. He thereafter sought relief from the judgment in that suit in the Federal courts. The latter court, holding that that suit was properly brought against him as an individual rather than an administrator, said:

"It is urged that relief against the judgment had against Krueger personally should be granted, because Krueger now claims as the administrator of the estate of his mother. Thus is presented the question whether the judgment against Krueger individually affects his rights as administrator. Krueger, being the heir of his deceased mother, whose estate he represents as administrator, as such heir is entitled to the possession of the property. As his possession flows from such right, as administrator he is privy to his possession as heir, and as heir may prosecute or defend the action. California Code of Civil Procedure, §§ 1452, 1453, and 1581; McFadden v. Ellmaker, 52 Cal. 348; Ryer v. Fletcher Ryer Co., 126 Cal. 482, 58 Pac. 908. Furthermore, Krueger having actually appeared and defended the action, it is not material that in making the defense he did not have himself substituted in his official capacity as the nominal defendant. California Code of Civil Procedure, § 1908; Estate of Ricks, 160 Cal. 467, 117 Pac. 539. We believe ejectment was properly brought against Krueger, occupant of the premises, individually rather than as administrator; the rule being that no action can be maintained against a personal representative, as such, for a tort. Luscomb v. Fintzelberg, 162 Cal. 433, 123 Pac. 247."

It may be noted that the court in the last sentence cites a California case, and the rule relied on is obviously the rule quoted in that case and contained in 18 Cyc. 884; 24 C. J. 742, and which is as follows:

"If a personal representative takes property not belonging to the estate, he has no right to it in his representative capacity. His refusal to restore it to the rightful owner renders him individually liable,

and he cannot be sued in his representative capacity for his individual tort.".

The Federal court evidently saw no difference between a case where a person wrongfully withholds personal property, and one where he wrongfully withholds real property. Counsel doubtless will immediately say that section 88-2502 expressly provides that executors and administrators may be sued in an action to recover real property. That is true, as the statute says, "in all cases in which the same might have been maintained by or against their respective testators or intestates." The Federal court had the California statute of similar import before it, and it is mentioned in Ryer v. Ryer, 126 Cal. 482, 58 Pac. 908. The statute evidently was not considered applicable. Whether or not it was thought that it is in fact but a survivor statute, we cannot say. We need not pursue the subject further, for in any event, the statute does not purport to limit a suit for the recovery of real property against the executor or administrator alone.

All in all, it must be apparent that the contention of counsel for the plaintiff here under consideration must be overruled.

3. Counsel further discuss in their brief the fact of the charge of $3500 for attorneys fees, and the question as to whether or not the claim of plaintiff should have been filed with the executrix. Some of the statements in the brief show that some of the language of the court has been misunderstood; other arguments advanced were fully considered on the original hearing. We are unable to see that any good purpose would be subserved if we had a re-argument of the case, and the petition for a rehearing should accordingly be denied.

*Denied.*

KIMBALL, Ch. J., and RINER, J., concur.